Paul J. USSERY and Allean M. Ussery, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18725.

United States Court of Appeals Fifth Circuit.

Nov. 9, 1961.

Aaron L. Ford, Jackson, Miss., for appellants.

B. Euple Dozier, Asst. U. S. Atty., Oxford, Miss., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Arthur I. Gould, Attys., Dept. of Justice, Washington, D. C., Abbott M. Sellers, Acting Asst. Atty. Gen., Thomas R. Ethridge, U. S. Atty., Oxford, Miss., Louis F. Oberdorfer, Asst. Atty. Gen., Harry Baum, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before RIVES, CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Paul J. Ussery appeals from a district court dismissal of his suit for a tax refund. He asserts that he was improperly taxed on the receipt of scholarship payments excludable under Section 117 of the Internal Revenue Code of 1954. We hold that the payments constituted taxable income not covered by the Section 117 exclusion and affirm the dismissal below.

In 1957 Ussery accepted employment with the Mississippi Department of Public Welfare as a County or District Visitor to aged people receiving payments under the federal Social Security Act and the Mississippi Public Welfare Act, 42 U.S.C.A. § 301 et seq. and Code Miss. 1942, § 7214 et seq. In 1958 he applied for an educational grant offered by the Mississippi Department of Public Welfare in cooperation with the United States Department of Health, Education, and Welfare; the federal government bears eighty per cent of the cost and the State of Mississippi the remaining twenty per cent. Under the program, an Educational Leave Committee selects certain permanent employees to be granted leave for further study in their field of work.

The plan provides monthly payments equal to the employee's previous salary and an additional payment to cover travel, tuition, and other fees. He is assured of reinstatement to his former position, or one with comparable security and pay, on his return to the agency. An employee on permanent status is given the benefit of all automatic salary advancements and adjustments effected during his absence. The employees are allowed to accrue annual and sick leave, and to retain their rights under the merit system for retirement benefits and workmen's compensation. On completion of his educational work, the employee is obligated to return to service with the Department of Public Welfare for at least twelve months for each school year of educational leave, or, if he fails to comply with this requirement, to reimburse the Department for that portion of his educational leave not liquidated through service.

Upon approval of his application September 2, 1958, Ussery enrolled at Tulane University for a year's course in social study as a candidate for a master's degree in Social Work. While he was on leave, the Mississippi Department of Public Welfare paid him $1,142, exclusive of travel and tuition. At the end of the academic year he returned to the Welfare Department. Ussery did not include the educational leave payments in his federal income tax return for 1958. The Internal Revenue Service, asserting that the amount was taxable, entered a deficiency tax assessment against him in the amount of $154.97 plus $4.65 interest. He paid the assessment and sued for refund in the district court. On appeal Ussery attacks both the validity of the Treasury Regulation under which he was denied the benefit of the Section 117 exclusion and the correctness of the factual determination that he was not within the statute and the regulations.

I.

Section 117 provides that "In the case of an individual, gross income does not include any amount received as a scholarship at an educational institution * *

or as a fellowship grant." [1] The Treasury Regulations under attack by appellant provide:

"Sec. 1.117-4. *Items Not considered as Scholarships or Fellowship Grants.*—The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * *

"(c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.*

"(1) Except as provided in § 1.117-2(a), any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment serv-ices or represents payment for services which are subject to the direction or supervision of the grantor.

"(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does

[1]. "Sec. 117. Scholarships and Fellowship Grants.

"(a) General Rule.—In the case of an individual, gross income does not include—

"(1) any amount received—

"(A) as a scholarship at an educational institution (as defined in section 151 (e) (4), or

"(B) as a fellowship grant, including the value of contributed services and accommodations; and

"(2) any amount received to cover expenses for—

"(A) travel,

"(B) research,

"(C) clerical help, or

"(D) equipment,

which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.

"(b) Limitations.—

"(1) Individuals who are candidates for degrees.—In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151 (e) (4) ), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

"(2) Individuals who are not candidates for degrees.—In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151 (e) (4) ), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).

"(A) Conditions for exclusion.—The grantor of the scholarship or fellowship grant is an organization described in section 501 (c) (3) which is exempt from tax under section 501 (a), the United States, or an instrumentality or agency thereof, or a State, a Territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia.

"(B) Extent of exclusion.—The amount of the scholarship or fellowship grant excluded under subsection (a) (1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151 (e) (4) ). (26 U.S.C. 1958 ed., Sec. 117.) "

not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant."

Ussery questions this construction of the statutory terms "scholarship" and "fellowship grant" to exclude payments to sponsor academic work that is to be performed "primarily for the benefit of the grantor."

The Supreme Court has "many times declared that Treasury Regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons." Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831, 836. See also Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397; Jones v. Commissioner of Internal Revenue, 5 Cir., 1957, 242 F.2d 616.

Looking to the ordinary meaning of the statutory terms we find no inconsistency in the interpretation adopted by the Regulations. "Scholarship", by common acceptance, at least as indicated by the dictionary definition, is "an allowance to an undergraduate or a graduate, as of a university, to aid him in prosecuting his studies." Webster's New International Dictionary, 2d Ed. Unabridged 1958. A "fellow" is the holder of a grant or allowance, usually from a university, based on his continuing his studies for a certain time. Atlhough study or research undertaken in an educational program may be of benefit to a grantor, the terms "scholarship" and "fellowship" connote a purpose of assistance that stands in distinction to the self-interest of an employer in the compensation of his employee. The restriction of the terms to exclude payments for work primarily for the benefit of the grantor is a natural reflection of this difference.

The legislative history of Section 117 bears out the conformity of this interpretation to the statutory purpose. The House Report accompanying the original proposal of the statute described the bill as follows:

"The bill provides that amounts received as scholarships or fellowships are excludible from gross income, but the exclusion is not to apply to (1) amounts received as payment for research or teaching services, and (2) in the case of individuals who are not candidates for degrees, amounts received as grants which in effect represent a continuing salary during a period while the recipient is on leave from his regular job. * * *

"When the scholarships and fellowships are granted subject to the performance of teaching or research services, the exclusion is not to apply to that portion which represents payments which are in effect a wage or salary. The amount included will be determined by reference to the going rates of pay for similar services. This allocation of the amount of the grant between taxable and nontaxable portions represents more liberal treatment than is allowed under present practice. Present law taxes the grant in its entirety unless services required of the recipient are nominal.

"This limitation on the exclusion will not result in the taxation of the portion of a grant which involves research or teaching services performed *primarily for the training and education of the recipient*. (emphasis added.)

"In the case of individuals who are not candidates for degrees, the bill provides a specific standard to be used in determining whether the

grant is in effect a salary payment. * * * " H.R.Rep. No. 8300, 83d Cong., 2d Sess. 16–17 (3 U.S.Code Cong. & Adm. News (1954) 4017, 4041–4042; see also id. at 4173–4175).

The Senate Committee accepted the House bill, making only a few technical changes. Sen.Rep. No. 1622, 83d Cong., 2d Sess. 17–18, 188–89 (3 U.S.Code Cong. & Adm.News (1954) pp. 4621, 4647–4648, 4823–4824).

The legislative history throws clear light on two situations that illustrate the thrust of the statute. Thus, when a person receiving a grant from a university is required to perform certain teaching or other services for the university, the House Committee Report demonstrates an intention that payments for such services should not be taxed if the work is primarily for the benefit of the student but that otherwise they should be. In the case of a person granted leave from his regular employment to study while the employer continues to pay him his regular salary, both Committees would tax these payments when the education is in effect employee training sponsored by the grantor and undertaken by the employee as part of his employment.

There is nothing in the legislative history to indicate that the statute was designed to exclude from gross income all payments made to enable individuals to participate in a program of educational value. It is a fair inference that the terms "scholarship" and "fellowship" were used as opposed to a term such as "compensation" and were carefully selected to bar cases where a payment is made for work primarily for the benefit of the grantor. We conclude that the Regulation excluding such payments from the reach of Section 117 is sound and proper.

## II.

■ Ussery also attacks the finding of the district judge that the amounts received by him during his period of educational leave were paid "to enable him to pursue studies or research primarily for the benefit of the grantor." This argument crumbles before over-whelming evidence to the contrary.

The terms of the agreement governing his leave show that the purpose of the program was to train Ussery and others for the benefit of the grantor. While on leave from his job with the Department of Welfare Ussery's regular salary was continued. He also received credit for salary advances, retirement benefits, and all other compensation that he would have been entitled to receive had he remained at his regular job. In short, his employer continued to compensate him just as though he were still a member of the working force. By itself this might indicate mere generosity on the part of the employer, but in addition Ussery was obligated to return to work for the Department for at least a year or to return his employer's investment in his education. The inference is clear that the program was adopted by the Department to train its employees so that they could perform their duties more effectively.

In this case, however, we need not rely solely on inference since the Department of Welfare has made repeated, unequivocal statements that the purpose of the educational leave program was to improve the training and efficiency of its personnel. The minutes of the State Board of Public Welfare authorize the use of funds for this program "to assist in increasing the effectiveness and efficiency of administration of the Public Assistance Programs of the State Department of Public Welfare by increasing the number of adequately trained Public Welfare personnel." This statement of purpose is repeated in the Department manual: "Educational leave is granted an employee in an attempt to strengthen professional and technical leadership in the Department of Public Welfare. The person granted leave is under an obligation to return to the agency." Educational leave may be granted for specialized professional or technical study necessary to achieve proper and efficient administration of the programs administered by the De-

partment of Public Welfare." These statements made clear to the employees that the program was sponsored by the State to train Welfare Department personnel and that after receiving education under the program the individual would be obligated for at least a year to turn his additional training to the benefit of the Department. Ussery was required to sign a formal agreement outlining his obligation and stating that the purpose of the grant was to "improve the efficiency" of the Department.

In arguing that his payments should fall within the Section 117 exclusion Ussery relies on Aileene Evans v. Commissioner, 1960, 34 T.C. 720; Wrobleski v. Bingler, D.C.W.D.Pa.1958, 161 F.Supp. 901; and Bhalla v. Commissioner, 1960, 35 T.C. 13. In Wrobleski and Bhalla the taxpayer received a fellowship grant from the educational institution in which he was enrolled, and the question was whether certain work performed in the academic program was primarily for the benefit of the institution. Bhalla was under no commitment to the grantor as to the course or subject matter of his studies. Wrobleski's training services supplemented the services of the regular staff of the grantor, but were "not of any primary or material benefit" to the grantor. All of the work done in the educational program was designed to further the training of the student, and the question was whether the program as a whole was sponsored in order that the grantor would be able to reap the benefits of employing better trained personnel. In Evans the Tennessee Department of Mental Health paid the taxpayer $160 a month for twelve months to enable her to complete training in the treatment and care of mental diseases on the agreement that after completion of her training she would work for the Department for at least one year or would, on demand, reimburse the Department for the sums advanced to her. The Tax Court held that the payments fell within the Section 117 exclusion. In that case, however, the taxpayer was not and had never been an employee of the Department, the payments had no bearing on her salary and, unlike Ussery, she was not compensated during her training as though she were a regular working employee.

Ussery's final argument is that the payments could not have been made primarily for the benefit of the grantor, since the grantor was the State Department of Welfare. He asserts that, unlike a business interested in increasing its profits, the State agency earns no profits and is responsible only to the general public; therefore only the general public will benefit from his training. It is true that the objective and function of a governmental agency differ from that of a business in this respect, but the important fact for tax purposes under Section 117 is that each type of organization does have its job to do, and each has an interest in doing its job in the most efficient way possible with the funds available to it. In terms of accomplishing its purposes, a government is just as able to benefit from obtaining more qualified personnel as is a business concern. The Department of Welfare was expending funds to obtain better trained employees to administer its programs, just as a highway department might expend funds to obtain better equipment to fulfill its functions. There is no warrant for excluding the payments just because the income comes from the state, any more than Ussery's income would be exempt from taxation after he returned to the Department.

We conclude that the Regulations denying relief under the Section 117 exclusion for payments to a taxpayer to enable him to pursue studies or research *primarily for the benefit of the grantor* are a proper interpretation of the statute. Ussery's case falls squarely within this Regulation.

The decision is

Affirmed.