David E. Mark and Elisabeth L. Mark v. Commissioner.
Mark v. Commissioner
Docket No. 2816-66.
United States Tax Court
T.C. Memo 1967-222; 1967 Tax Ct. Memo LEXIS 40; 26 T.C.M. (CCH) 1106; T.C.M. (RIA) 67222; November 3, 1967
*40 Petitioner, who had been employed as a foreign service officer of the State Department for 17 years, was named as a Fellow at the Harvard Center for International Affairs for the purpose of enabling him to pursue advanced studies in foreign relations for ten months in the company of other senior foreign service officers of this and other countries. His appointment was made on the recommendation of officials of the State Department interested in personnel training who made it a practice to recommend one or two of the outstanding foreign service officers for such appointments each year. These recommendations were usually found acceptable by the Center. The State Department, believing that the program offered to Fellows by the Center provided valuable training for them and feeling that attendance at the Center by its outstanding foreign service officers increased their qualifications for positions of higher responsibility, considered the program for Fellows at the Center to be official duty for its foreign service officers who were appointed Fellows at the Center and continued to pay their regular salaries to the foreign service officers appointed during their attendance there. Accordingly, *41 petitioner was paid his regular salary by the State Department during the period of his fellowship at the rate of $18,920 per annum. No particular course of studies by petitioner was required by the Department and the Department did not monitor the academic activities of petitioner at the Center. No requirement was imposed on petitioner to return to his post at the Department at the end of his fellowship. However, the Department expected petitioner to return to his work there and he did so. Held, no part of salary payments to petitioner by the State Department while he was a Fellow at the Center was excludible as a fellowship grant under section 117, I.R.C. 1954 and section 1.117-4(c), Income Tax Regs.
David E. Mark, pro se, 8314 Loring Dr., Bethesda, Md.
Harvey I. Lapin, for the respondent. KERN Memorandum Opinion KERN, Judge: The respondent determined a deficiency in the income tax of petitioners for the calendar year 1964 in the amount of $549.01. Respondent's notice of deficiency reflected certain adjustments made by him and agreed upon by the petitioners. The issue remaining in dispute relates to a claimed exclusion from gross income by petitioners of $1800 in 1964 under section 117, I.R.C. 1954. All of the facts relating to the question before us have been stipulated by the parties and we find them to be as stipulated. We incorporate herein by this reference the stipulation and the exhibits attached thereto. They may be summarized as follows: David E. Mark and Elisabeth L. Mark, petitioners, reside in Bethesda, Maryland, and filed their joint income tax returns for the year 1954 with the district director of internal revenue at Baltimore, Maryland. As Elisabeth is a party to this cause solely because she *43 joined in the return of her husband, David, he will hereinafter be referred to as the petitioner. The petitioner has been since 1946 and is presently a Foreign Service Officer of the United States in the Department of State. On September 16, 1963, the petitioner was appointed by Harvard University as a Fellow at its Center for International Affairs in Cambridge, Massachusetts, hereinafter referred to as the Center, to serve from September 1, 1963, through June 30, 1964. Although this appointment did not result in any cash payment to petitioner from Harvard, the fellowship entitled petitioner to use without charge the facilities of Harvard University and the Center, including the privilege of attending such classes, lectures and seminars as he chose. While at the Center petitioner continued to receive from the State Department regular "salary" payments aggregating $18,902.36 for the whole of 1964. Transportation and moving expenses incurred by the petitioner were also paid by the State Department. Petitioner was under no obligation to return to his duties at the State Department after the completion of his ten months at the Center, in that he could have resigned at any time *44 from the Department. However, the Department expected him to return and he did so return. An announcement from the Center describes its "PROGRAM FOR FELLOWS," in part, as follows: The program for Fellows, now in its sixth year, brings to Harvard annually a group of 12-14 senior officials of various nationalities who spend the year at the Center in advanced study on leave or on assignment from their respective services. Only men who combine high professional competence with capacity for scholarly reflection and critical thought are sought for the program. They normally have had 15-20 years of career service bearing on international affairs or development. The chief criteria for selection are the capacity of the individual and his prospects for continued rise to positions of increasing responsibility. An effort is made each year to have a group that is well balanced in geographical background and fields of professional interest. The need for such training seems evident. Most government officials, especially the ablest ones, toward whom responsibilities tend to gravitate, find less time for reflection and study than they would like and need. Ordinarily they are overburdened with *45 day-to-day matters. The tasks to which they must give priority are not necessarily the most important tasks - only the tasks calling for immediate attention. Moreover, they usually have little chance to reflect on the deeper forces that are restructuring the international environment and making many of the presuppositions of one decade inapplicable to the next. It is important for such men (and for their governments) that they have a chance to reexamine their picture of the world, to bring it up to date and to place in better perspective many of the things that they already know. This is the main idea behind the program. Fellows come to Cambridge for the full academic year, which runs from about mid-September to mid-June. They are encouraged to bring their families with them. Fellows are not candidates for degrees at Harvard; they are classed as corporation officers, with standing comparable to that of Faculty, although they have no teaching responsibilities. They work at the Center as colleagues of the Faculty, not as students. The Center tries to help each man make the best use of his time in his own way for his own purposes. There is heavy emphasis on individual study and on mutual *46 stimulation through the exchange of ideas. The Fellows are encouraged to read widely, to reexamine their premises, to explore new approaches and to investigate new ideas. In the course of the year, each Fellow chooses a topic for intensive investigation and writes an analytical paper probing the underlying issues. These papers are circulated and discussed at seminars for Faculty and Fellows in the spring. While in attendance at the Center, the petitioner sat in on a number of graduate level seminars, as well as some regular courses, in the fields of history, economics, government, sociology and anthropology. Petitioner's major project during his stay at the Center was to produce an extended article, later published, pertaining to nuclear test ban treaty negotiations. The petitioner was not a candidate for a degree while participating in the program for Fellows at the Center. The Department of State placed no restrictions upon the petitioner with regard to the courses and seminars he elected to attend, and the major written work referred to done by him was on a subject of his own choosing. Neither petitioner nor anyone at the Center was required to submit anything in the nature *47 of a "progress report" to the State Department regarding the activities of the petitioner in the program for Fellows. The Center was organized in 1958 by Robert Bowie, former Assistant Secretary of State. From 1958 it was the practice of the State Department to nominate one or two Foreign Service Officers for selection as Fellows at the Center. These nominees were generally found acceptable by the Center and appointed as Fellows. The Acting Director of the Foreign Service Institute of the Department of State, Howard E. Sollenberger, stated in a letter to respondent's counsel in this case dated February 28, 1966, as follows: This training assignment [petitioner's assignment "to the Bowie Seminar at Harvard"] is considered by the Department to be official duty. His full salary was therefore paid during the period of this training assignment. Transportation and moving expenses are paid for these assignments by the Department in accordance with standard Foreign Service practices. There was no tuition charge made by Harvard for this course. Had there been, this would also have been paid by the Department. The Chief of the Functional Personnel Division of the Department of State, *48 Jules Bassin, in a letter to the petitioner dated October 28, 1965, characterized the attitude of the Department regarding the participation of its Foreign Service Officers in the Center's program for Fellows in the following way: As far as the Department is concerned, attendance at the Center is equivalent to other types of senior officer training, such as assignment to the National War College or the Senior Seminar of the Department's Foreign Service Institute. The Department does not monitor the activities at Harvard of the officers sent to the Center. It has also not received any efficiency reports or other evaluative rating on the officers' work or performance at the Center; they merely return to duty after their ten months at Harvard are over. From what we know about the Center's activities and from the subsequent careers of the officers sent there, we are satisfied that atendance at the Center serves to broaden the officers' intellectual horizons and to increase their qualifications for positions of higher responsibility. It is stipulated that these officials of the Department of State would have so testified had they been called as witnesses. Section 117, I.R.C. *49 1954, the relevant parts of which are set out in the margin, [1] provides for an exclusion from gross income of the recipient of amounts received as a fellowship grant. *50 The parties agree that the payor in the instant case, the State Department, is an agency of the United States within the meaning of section 117(b)(2)(A)(iv) and that if the payments made qualify as fellowship payments, they are excludable from gross income only to the extent of $300 per month, or $1800 for the year 1964, on account of the limitation imposed by section 117(b)(2)(B). The issue presented is whether the payments to the petitioner qualify as amounts received as a fellowship grant. The regulations of respondent state that "[a] fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Section 1.117-3(c), Income Tax Regs. The regulations enumerate certain items which are not to be considered as scholarship or fellowship grants, the proscribed items herein relevant being (1) amounts which represent compensation for past, present or future services or payment for services which are subject to the direction or supervision of the grantor, and (2) amounts which enable the recipient to pursue studies primarily for the benefit of the grantor. Section 1.117-4(c), Income Tax Regs. *51 [2]
Neither of the parties question the validity of these regulations of the respondent (see Ussery v. United States, 296 F. 2d 582, 585) but they differ as to their applicability to the instant case. It is the position of the respondent that the sums paid to the petitioner were both compensation for services *52 and amounts paid primarily for the benefit of the grantor. Whether the payments were so made is a question to be determined on the basis of all the facts and circumstances of each case. For this reason a detailed discussion of the facts involved in the many cases in this area would not prove helpful. See, e.g., Stewart v. United States, 363 F. 2d 355; Ussery v. United States, 296 F. 2d 582; Elmer L. Reese, Jr., 45 T.C. 407, aff'd per curiam, 373 F. 2d 742; Aileene Evans, 34 T.C. 720; Woddail v. Commissioner, 321 F. 2d 721, affirming a Memorandum Opinion of the Court; Howard Littman, 42 T.C. 503; Chander P. Bhalla, 35 T.C. 13. It has been held that one of the tests to be applied under section 1.117-4(c), Income Tax Regs., is whether the primary purpose of the payments is to further the education and training of the recipient rather than to serve the interest of the grantor. Bhalla, supra, at 17; Charles P. Ide, 40 T.C. 721, 724, aff'd 335 F. 2d 852. Petitioner has been a Foreign Service Officer with the State Department *53 since 1946. In 1963 he was nominated for appointment to the Center by the State Department and subsequently was awarded an appointment. The program was developed especially for senior officers in the foreign service of various countries and most of its participants were career officers with 15-20 years of experience in international affairs. The State Department had sent one or two foreign service officers to the Center each year and was satisfied that "attendance at the Center serves to broaden the officers' intellectual horizons and to increase their qualifications for positions of higher responsibility." Petitioner returned to the State Department after his ten months at the Center and has remained there up to the present time. We think that these facts point strongly to a conclusion that the primary purpose of the payments made herein was to serve the interest of the grantor-employer. We are particularly impressed by the uncontradicted and unambiguous statements of State Department officials regarding the reason for the payments. The only direct evidence on this record relating to the purpose of the State Department in making the payments is contained in letters written by *54 two officials of the State Department, portions of which we have set out, supra. In one, the Chief of the Functional Personnel Division of the Department of State stated that: As far as the Department is concerned, attendance at the Center is equivalent to other types of senior officer [training.] [Emphasis added]… From what we know about the Center's activities and from the subsequent careers of the officers sent there, we are satisfied that attendance at the Center serves to broaden the officers' intellectual horizons and to increase their qualifications for positions of higher responsibility. In the other letter the Acting Director of the Foreign Service Institute of the State Department stated that "[this] training assignment is considered by the Department to be official duty." We think the instant case bears marked resemblance to Ussery, supra. In that case, as here, the most persuasive evidence as to the purpose for which certain payments were made were [was] the statements of the grantor itself. The court said there (296 F. 2d at 586): In this case, however, we need not rely solely on inferences since the Department of Welfare has *55 made repeated, unequivocal statements that the purpose of the educational leave program was to improve the training and efficiency of its personnel. We think this language applies equally here. Although statements by a grantor or its officers are not necessarily conclusive regarding the primary purpose for which payments were made by it, they are extremely persuasive where they are unequivocal and uncontradicted, as they were in Ussery, supra, and as they are in the instant case. The petitioner places great emphasis on three aspects of the program at the Center and his relationship to the State Department with regard to his participation in that program which in his opinion require a conclusion that the payments were made primarily for his personal benefit rather than that of the State Department, namely, that he enjoyed a high degree of freedom regarding the selection of the courses and seminars which he attended, that the State Department did not require or receive evaluation reports in respect to the petitioner's performance at the Center, either from the Center or the petitioner himself, and that the petitioner could have resigned from the Foreign Service after *56 his time at the Center without incurring any penalty. We find none of these factors persuasive. The announcement from the Center, from which we have set out excerpts, supra, indicates that its program for Fellows was specifically geared to the training of foreign service personnel, and officials of the State Department in the letters referred to expressed the opinion that the Center had been effective in this endeavor, at least with respect to State Department officials who had attended. In addition, we attach little significance to the fact that the petitioner was not required to return to the Foreign Service for some stated period of time where, as here, the petitioner had been in the Foreign Service since 1946, had evidenced no intention to separate from the Foreign Service, was apparently expected by the State Department to return, and did in fact return. It is true that in Ussery, supra, the recipient was under a specific commitment to return to his position with the Mississippi Department of Welfare for a year following his leave to work on a Master's degree in social work. Ussery, supra, at 586. But there the recipient had been employed by the grantor *57 for only one year prior to the leave and presumably the requirement was necessary in order to insure that the grantor would reap the intended benefits of the payments. There is nothing in this case to suggest that any such specific commitment was necessary to insure the return to duty at the State Department of petitioner, a successful career Foreign Service Officer of some 17 years standing, who had expressed no intention to abandon his foreign service career, especially in view of the fact that the Department considered that his attendance at the Center would "increase [his] qualifications for positions of higher responsibility." In any event, the court in Ussery clearly indicated that the decisive factor in determining the primary purpose of the payments was the unambiguous declarations of the grantor, not the fact that the employee was required to return for at least one year following completion of a year's work on a Master's degree. Ussery, supra, at 586-587. Having determined that the payments herein were made primarily for the benefit of the State Department, we need not decide whether they also constituted compensation for past, present or future services. *58 See Stewart v. United States, 363 F.2d 355. Decision will be entered for the respondent. Footnotes
1. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations; and * * *
(b) Limitations. - * * *
(2) Individuals Who Are Not Candidates For Degrees. - In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B). (A) Conditions for Exclusion. - The grantor of the scholarship or fellowship grant is - * * *
(iv) the United States, or an instrumentality or agency thereof, or a State, a territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia. (B) Extent of Exclusion. - The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151(e)(4)).↩
2. Sec. 1.117-4. Items not considered as scholarships or fellowship grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * *
(c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of section 1.117-2, (not herein relevant] any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.↩