Norman F. Stougaard and Mona L. Stougaard, et al. [1] v. Commissioner. Stougaard v. Commissioner
Docket Nos. 5532-69, 5546-69, 787-70, 1744-70, 2511-70, 4863-70.
United States Tax Court
T.C. Memo 1971-311; 1971 Tax Ct. Memo LEXIS 22; 30 T.C.M. (CCH) 1331; T.C.M. (RIA) 71311; December 8, 1971, Filed Norman F. Stougaard, pro se in docket No. 5532-69; Frederick J. Buhr, pro se in docket No. 5546-69; Jack N. Eisendrath, for the petitioners in docket No. 787-70; James A. Kramer, pro se in docket No. 1744-70; and Chester L. Skinner, pro se in docket Nos. 2511-70 and 4863-70. Matthew W. Stanley, for respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined deficiencies in the respective petitioners' income taxes as follows: Petitioner
Year
Amount
Norman F. Stougaard, et ux
1967
$726.73
Frederick J. Buhr, et ux
1967
615.83
Kenneth W. Oldham, et ux
1966
504.47
1967
476.76
James A. Kramer, et ux
1967
569.86
Chester L. Skinner, et ux
1967
412.71
1968
384.64
*23 The only question before this Court is whether certain amounts received by each of the above-named petitioners under the terms of a "Graduate Social Work Training Agreement" are excludable from income as scholarship or fellowship grants within the meaning of section 117. [2]
Findings of Fact Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Norman F. Stougaard (hereinafter referred to as Stougaard) and his wife, Mona L. Stougaard, resided in Racine, Wisconsin at the time of filing their petition herein. A joint Federal income tax return for 1967 was filed by Stougaard and his wife with the district director of internal revenue, Milwaukee, Wisconsin. In 1963 Stougaard commenced employment as a Social Worker I in the Southern Wisconsin Colony and Training School, Union Grove, Wisconsin, where he continued to work until February 1967. The training school was operated by the Division of Mental Hygiene, Wisconsin State Department of Public Welfare, which has since been redesignated as the Department *24 of Health and Social Services, but will hereinafter be referred to as the Department of Public Welfare. Kenneth W. Oldham (hereinafter referred to as Oldham) and his wife, Carrie E. Oldham, resided in Milwaukee, Wisconsin, at the time of filing their petition herein. Joint Federal income tax returns were filed by Oldham and his wife for 1966 and 1967 with the district director of internal revenue, Milwaukee, Wisconsin. In October 1963 Oldham commenced employment as a social worker with the Milwaukee County Department of Public Welfare and remained in that position until September 10, 1965. Frederick J. Buhr (hereinafter referred to as Buhr) and his wife, Shirley A. Buhr, resided in Janesville, Wisconsin, at the time of filing their petition herein. A joint Federal income tax return for 1967 was filed by Buhr and his wife with the district director of internal revenue, Milwaukee, Wisconsin. In September 1965 Buhr commenced employment as a Social Worker I with the Department of Public Welfare, Division of Children and Youth (now part of the Division of Family Services), Milwaukee District Office, and remained in that position until September 15, 1966. James A. Kramer (hereinafter *25 referred to as Kramer) and his wife, Barbara A. Kramer, resided in West Allis, Wisconsin, at the time of filing their petition herein. A joint Federal income tax return for 1967 was filed by Kramer and his wife with the district director of internal revenue, Milwaukee, Wisconsin. In October 1964 Kramer commenced employment as a Case Worker I in the Child Welfare Division of the Waukesha County Department of Public Welfare and remained in that position until September 1966. Chester L. Skinner (hereinafter referred to as Skinner) and his wife, Eunice A. Skinner, resided in Kenosha, Wisconsin at the time of filing their petition herein. Joint Federal income tax returns for 1967 and 1968 were filed by Skinner and his wife with 1333 the district director of internal revenue, Milwaukee, Wisconsin. Upon his graduation from college, Skinner commenced employment as a Case Worker I with the Kenosha County Department of Public Welfare and remained in that position until June 1967. On the dates hereinafter indicated, Stougaard, Oldham, Kramer, and Skinner (hereinafter referred to collectively as the petitioners) entered into a Graduate Social Work Training Agreement (hereinafter referred *26 to as the Agreement) with the Department of Public Welfare. The Agreement in significant part provided: To the end that fully qualified social workers may be available for the State Dept. of Public Welfare and agencies under its supervision, the following agreement is entered into by and between hereinafter referred to as the student and the State Department of Public Welfare hereinafter referred to as the appointing authority. It is mutually understood and agreed by and between hereto subscribing parties: 1. The student will enroll in the Univ. of Wis. - Milwaukee School of Social Work beginning and continuing until all requirements of a master's degree are completed except for normal vacation periods, in anticipation of the completion of all requirements for a master's degree * * *. 2. The appointing authority agrees to give the student a monthly stipend * * * for each month of enrollment * * *. [Computed on the basis of a $225 base amount plus $25 on account of past employment with a social welfare agency in the state, $50 for the first dependent and $25 for each other dependent up to three. 3. The student agrees that he will continue full time enrollment and will not *27 assume any employment or other activity which would impair his ability to complete all training requirements within the minimum period of time. 4. In consideration of the covenants herein contained and in furtherance of his training in social work, the student agrees that he, if appointed before or within 30 days of the completion of training will serve for a period of not less than 12 months for each academic year for which a stipend was paid, as a social worker for the State Department of Public Welfare or other agency approved by the appointing authority. 5. The appointing authority may cancel this agreement at any time for just cause. If this agreement is cancelled by either the appointing authority for just cause, or by the student at his request, at any time prior to the completion of the two years of service as provided in the paragraph next preceding, it shall be considered a breach of this agreement by the student, and in such event, the student shall pay to the appointing authority, and shall be liable therefor until paid, the amount he has received under this agreement, said amount to be considered not as a penalty but as liquidated damages for such breach * * *. *28 Pursuant to the Agreement entered into with the Department of Public Welfare on February 3, 1967, Stougaard enrolled in the University of Wisconsin - Milwaukee (sometimes hereafter referred to as the University) in February 1967. Stougaard was given a leave of absence from his position at Southern Wisconsin Colony and Training School for the period of his enrollment in the University. Under the apropriate state civil service regulations, Stougaard remained a state employee and did not lose vacation and sick-pay benefits or seniority accrued prior to his entering the University. However additional amounts of such benefits were not accrued during the period he was at the University. While Stougaard attended the University the Division of Mental Hygiene exercised no immediate supervision over him. However, the Division requested and received from the University periodic reports on him. Under the Agreement with the Department of Public Welfare, Stougaard received a stipend of $375 per month while attending the University. The money was disbursed to Stougaard bimonthly on the same date as the regular state payroll disbursements were made. The funds for the payments were neither isolated *29 nor segregated from funds used in the regular payrolls. The payments made to Stougaard under the Agreement were funded by a grant in aid to the state from the Federal Government. Federal withholding taxes were deducted from the monthly payments made to Stougaard, but social security and pension payments were not. Following receipt of his Master of Social Work (M.S.W.) degree in June 1968, Stougaard resumed employment at the Training School. This employment satisfied the future services requirement of the Agreement. Upon resuming his employment at the Training School, Stougaard was reclassified as a Social Worker II without his serving the six months' probationary period required of new employees in that grade. His initial salary grade in his new 1334 classification was one salary grade higher than that available to a new employee with a master's degree hired as a Social Worker II. Stougaard's choice of employment following his graduation was subject to the approval of the Division of Mental Hygiene of the Department of Public Welfare. Stougaard received a total of $3,944.76 in stipend payments in 1967 and excluded that amount from his gross income for that year. In a deficiency *30 notice dated August 8, 1969, respondent included those payments in Stougaard's 1967 income. Oldham entered into the Agreement with the Department of Public Welfare on August 6, 1965. The Agreement was renewed on June 29, 1966. In accordance with the Agreement, Oldham enrolled in the University in September 1965 after having resigned his position with the Milwaukee County Department of Public Welfare. Under the Agreement and its renewal, Oldham received payments at the rate of $315 per month from September 1965 to June 1966, and $375 per month from September 1966 to June 1967. The funds paid Oldham were provided to the Department of Public Welfare by the state budget and disbursed under the discretionary authority of the Division of Corrections of the Department of Public Welfare. The funds used for payments to Oldham were not earmarked for expenditure in any way prior to their receipt by the appropriate authority in the Division of Corrections. There were no formal regulatory provisions governing the funds used for the payments to Oldham. The amounts received by Oldham were paid bimonthly and were not segregated or isolated from the regular payroll funds of the Division of Corrections. *31 Federal withholding taxes were deducted from Oldham's payments but social security contributions were not, nor were any deductions made for retirement or other regular payroll benefits. During both years he was at the University, Oldham performed field work for the Division of Corrections and was reimbursed for his travel expenses. The field work counted as a course of study for which Oldham was given scholastic credit by the University. Oldham received his field work assignments in accordance with a longstanding arrangement between the Division of Corrections and the University that students attending the University under the Agreement and sponsored by the Division of Corrections would have their field work placement in institutions operated by that Division. Oldham graduated from the University in July 1967, and received a M.S.W. degree. Upon his graduation Oldham was employed as a probation and parole agent by the Division of Corrections. A probationary employment period was served by Oldham upon his acceptance of the position. Oldham served as a probation and parole agent for 22 months. Since this periok was not sufficient to satisfy the future services requirement of the Agreement, *32 Oldham was required to make recompense to the state for the two final months of his requirement which he failed to serve. Oldham excluded from taxable income the amounts received under the Agreement to the extent of $3,015 and $2,250 in 1966 and 1967, respectively. Respondent in a statutory notice dated November 10, 1969, determined that the exclusions were improper and asserted deficiencies for 1966 and 1967. Buhr entered into the Agreement with the Department of Public Welfare on September 21, 1966. Upon undertaking studies at the University in September 1966, Buhr was granted an educational leave of absence from the Division of Children and Youth, Milwaukee District Office. The leave of absence extended for a period of one year before it was permitted to lapse. For that year Buhr remained a state civil service employee under the appropriate state civil service regulations, and therefore did not lose certain civil service employee benefits previously acquired. While enrolled in the University Buhr was not directly supervised by any state or local official. However, the University sent scholastic progress reports on Buhr to the Division of Children and Youth of the Department *33 of Public Welfare. Under the Agreement Buhr received a monthly payment of $325. Payments were made to Buhr bimonthly by the Division of Children and Youth and were drawn on a special account identified as Graduate Stipend. The funds for the payments were provided by a grant from the Federal Government. Federal withholding taxes were deducted from the payments, but social security contributions were not. While in the University Buhr accrued no civil service benefits such as vacation or sick-pay credits, or seniority. 1335 While pursuing studies leading to his M.S.W., Buhr was assigned field work first with the Division of Mental Hygiene, and then with the Waukesha County Department of Public Welfare. The field work was conducted under the auspices of the University as an academic requirement of the M.S.W. program, and was designed primarily to benefit the student. Buhr's choice of employment following his graduation with a M.S.W. in February 1968 was subject to the approval of the Division of Children and Youth and the Department of Public Welfare. Upon his graduation, Buhr was employed by the Rock County Department of Public Welfare in a child welfare unit as a new employee *34 on probationary status. Buhr received a total of $4,068.28 as a stipend during 1967 and excluded that amount from his gross income for that year. In a statutory notice dated August 8, 1969, respondent included the amount of the stipend in Buhr's 1967 income. Kramer entered into the Agreement with the Department of Public Welfare on September 21, 1966. In September 1966 Kramer resigned from his position with the Waukesha County Department of Public Welfare and undertook studies at the University. Waukesha County had no provision for educational leaves of absence. While enrolled in the University, Kramer was not directly supervised by any state or local official. However, the University sent scholastic progress reports on Kramer to the Division of Children and Youth. Under the Agreement Kramer received payments at a monthly rate of $325. Payments were made to Kramer bimonthly by the Division of Children and Youth and were drawn from a special account identified as Graduate Stipends. The funds for the payments were provided by a grant from the Federal Government. Federal withholding taxes were deducted from the payments, but social security contributions were not. While in the *35 University Kramer did not accrue the usual state civil service employee benefits. During both years Kramer was enrolled in the University he was assigned field work in organizations under contract to or under the control of the Department of Public Welfare. The field work was conducted under the auspices of the University as an academic requirement of the M.S.W. program, and was designed primarily to benefit the student. Kramer's choice of employment following his graduation with a M.S.W. in January 1968 was subject to the approval of the Division of Children and Youth and the Department of Public Welfare. Kramer received a total of $4,068.28 as a stipend in 1967 and excluded that amount from his gross income for that year. In a statutory notice dated December 17, 1969, respondent included the amount of the stipend in Kramer's 1967 income. Skinner entered into the Agreement with the Department of Public Welfare on June 4, 1967. In June 1967, Skinner was granted an educational leave of absence by the Kenosha County Department of Public Welfare, and in the same month commenced study for his M.S.W. During the period of his enrollment Skinner was not directly supervised by state *36 or local government officials. The University periodically sent to the Division of Children and Youth written reports on Skinner's scholastic progress. Under the Agreement, Skinner received payments at a monthly rate of $300. Payments were made to Skinner bimonthly by the Division of Children and Youth and were through channels other than those used to compensate regular state civil service employees. Federal withholding taxes were deducted from the payments, but social security contributions were not. Upon enrolling in the University Skinner retained certain previously accrued employee benefits such as sick days and seniority. However, Skinner, while at the University, did not accrue the usual state civil service employee benefits. During his time at the University Skinner was assigned field work; first with the Division of Mental Hygiene and then with a private agency. The field work was conducted under the auspices of the University as an academic requirement of the M.S.W. program and was designed primarily to benefit the student. Skinner's choice of employment following his graduation in June 1968 was subect to the approval of the Division of Children and Youth and the Department *37 of Public Welfare. Skinner received as educational stipends under the Agreement $1,956 in 1967 and $1,656 in 1968. He excluded the amount of the stipend from income in both years. In a statutory notice dated February 5, 1970, respondent disallowed the exclusion with respect to 1967 and included in 1336 Skinner's income the amount of the stipend received in 1967. In a statutory notice dated June 16, 1970, respondent disallowed the exclusion with respect to 1968 and included in Skinner's income the amount of the stipend received in 1968. Opinion Here we must determine whether certain amounts received from the Wisconsin State Department of Public Welfare under the terms of a Graduate Social Work Training Agreement may be excluded from income by each of any of the petitioners as scholarship or fellowship grants under section 11. [3]
Preliminarily we must deal with a small procedural matter. *38 At trial Oldham (docket No. 787-70), by his attorney, moved for dismissal or judgment on the pleadings in docket No. 787-70 because the attorney had not received a copy of respondent's answer. The Court took this motion under advisement. Records of this Court indicate that the answer in docket No. 787-70 was served on April 9, 1970. Rule 22, Tax Court Rules of Practice, states that service of pleadings is made by the Clerk's mailing a record copy of such pleading to a petitioner or his counsel of record. Rule 24(a)(4) tells us that: "Counsel not properly enrolled to practice before this Court will not be recognized * * *." Counsel for Oldham, Jack N. Eisendrath, was not admitted to practice before this Court until April 24, 1970, and he entered his appearance in docket No. 787-70 on that same date. Consequently, under Rule 24 (a)(4) the answer could not properly have been served on Eisendrath. Since there was no showing that the petitioners themselves did not receive a record copy of the answer, the motion for dismissal or judgment on the pleadings in docket No. 787-70 is denied. We now turn to the substantive issue. The terms "scholarship" and "fellowship grant" are defined in *39 section 1.117-4(c), Income Tax Regs., where it is provided that the terms do not include payments representing "compensation for past, present, or future employment services." This regulation provision was approved in Bingler v. Johnson, 394 U.S. 741 (1969), and there construed to mean that bargained for payments given in return for past, present, or future services are not excludable as scholarships under section 117. 394 U.S. at 757-58. The various cases here before us are uniform in their legally operative facts. In each instance there was a bargained for quid pro quo. Under his respective Agreement with the Department of Public Welfare, each petitioner received a stated monthly stipend. The amount of the stipend was based upon the recipient's family status without regard otherwise to need. In return each committed himself, upon completing his education, to working "as a social worker for the State Department of Public Welfare or other agency approved by the appointing authority." The appointing authority was the Department of Public Welfare. It is apparent then that the stipend payments were made for the purpose of inducing future services, rather than *40 primarily for the purpose of furthering any individual petitioner's education. Jerry S. Turem, 54 T.C. 1494, 1505 (1970). The presence of a bargained for quid pro quo is fatal to the contention that the amounts paid as stipends under the Agreement are excludable from income under section 117. Bingler v. Johnson, supra, at 757; Ussery v. United States, 296 F. 2d 582, 586 (C.A. 5, 1961). Several of the petitioners contend that the stipend they received was based upon financial need and not on the circumstances of prior service, and emphasize that they accrued no employee benefits while they were going to school. While we doubt that these contentions as to the facts are entirely correct, even if they were their existence would not serve to alter the outcome of these cases. The contention is made that the Agreement was not considered enforceable, but rather was considered a gentlemen's agreement by the parties. This assertion is negated by the fact that one of the petitioners here, Oldham, was required to make reimbursement to the Department of Public Welfare because of his failure to complete fully the period of services required after graduation. *41 In any event it always remains open to the state to enforce the agreement. See Lowell 1337 D. Ward, 55 T.C. 308, 311 (1970), affirmed - F. 2d - (C.A. 8, 1971). Since the state had the right to command the petitioners' services and to enforce repayment if the services were not rendered, it is without significance that the state was under no obligation to exercise its option. Several of the petitioners had to resign their positions rather than take leaves of absence to attend school. While the Agreement was with the state Department of Public Welfare, three of the petitioners had their prior employment with various county departments of public welfare. Two of the petitioners upon graduation found employment with governmental agencies different from those where they were employed prior to school. These various features brought to our attention in an attempt to demonstrate that the stipends were fellowships because there was no continuing employment relationships with the Department of Public Welfare. This overlooks the fact that the Department of Public Welfare, and its divisions, and the county public welfare departments were jointly involved in providing social welfare *42 services [4] and granting educational stipends, and thus under section 1.117-4(c), Income Tax Regs., are both considered employers of the petitioners and grantors of the stipends. Jerry S. Turem, supra, at 1506; Marjorie E. Haley, 54 T.C. 642, 646 (1970). In any event each of the petitioners committed himself to the provision of future services, and in such circumstances a continuing employment relationship prior to the fulfillment of the obligation is not necessary. Lowell D. Ward, supra.
The petitioners herein testified forthrightly and candidly, obviously convinced of the validity of their contentions. However, the facts here present establish to our satisfaction that they were "paid to learn" and did not "learn for pay." In accordance with the foregoing we decide that none of the petitioners during the respective years in issue is entitled to exclude from income under section 117 the amounts they each received as stipends under the Agreement with the Department of Public Welfare. Consequently, and to reflect concessions in some cases: Decisions *43 will be entered for respondent in docket Nos. 5532-69, 5546-69, 1744-70, 2511-70 and 4863-70. Decision will be entered under Rule 50 in docket No. 787-70. Footnotes
1. Cases of the following petitioners are consolidated herewith: Frederick J. Buhr and Shirley A. Buhr, docket No. 5546-69; Kenneth W. Oldham and Carrie E. Oldham, docket No. 787-70; James A. Kramer and Barbara A. Kramer, docket No. 1744-70; Chester L. Skinner and Eunice A. Skinner, docket Nos. 2511-70 and 4863-70.↩
2. All statutory references herein are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
3. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant * * *.↩
4. See, e. g., Wis. Stat. Ann. (1957) secs. 46.03, 46.16, 46.206, 48.48, 48.79, 49.50 and 49.52↩.