ALFRED GEORGE ALLEN III, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allen v. Commissioner
Docket No. 24111-81.
United States Tax Court
T.C. Memo 1983-374; 1983 Tax Ct. Memo LEXIS 412; 46 T.C.M. (CCH) 574; T.C.M. (RIA) 83374; June 23, 1983. *412 Held, payments to P under the Gulf Tuition Assistance Program are not excludable from income under sec. 117, I.R.C. 1954. Alfred G. Allen III, pro se. Sheri Wilcox, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency of $617 in petitioner's Federal income tax for 1978. The sole issue for decision is whether amounts received by petitioner under the Gulf Tuition Assistance Program are scholarships or fellowship grants and thus excludable from income under section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are *413 so found. It has been stipulated that petitioner resided in Houston, Texas, when he filed the petition in this case. From February 1977 to August 1977, petitioner was employed full time by Gulf Oil Corporation (hereinafter Gulf) as an entry level Land Agent, in Houston, Texas. During this period, petitioner decided to enroll in law school and requested educational leaves of absence from Gulf during the semesters he would be attending law school in Dallas, Texas. Regular full-time employees with at least six months of continuous and regular service are eligible to be considered by Gulf for educational leaves of absence. All educational leave requests are considered on an individual basis, with leave being granted only if Gulf determines that the employee's potential for advancement is promising and the employee's proposed course of study is relevant to corporate operations. Gulf determined that petitioner met these prerequisites, although he was advised that a law degree was not required for the position of Land Agent. In August 1977 Gulf granted petitioner the requested educational leaves of absence. Employees granted educational leaves of absence are eligible to participate *414 in the Gulf Tuition Assistance Program so long as they are full-time employees in regular service in the United States and members of the Gulf Pension Plan. Under this program Gulf provides financial assistance to an employee who successfully completes approved educational courses or an approved degree program which promises to improve the individual's present job performance or develop potential for advancement within Gulf. Gulf determined that petitioner met these criteria and granted him tuition assistance. When petitioner was on educational leave and receiving tuition assistance, Gulf discontinued his regular salary payments but continued its contribution toward his health and life insurance benefits. However, petitioner did not accrue vacation time during the educational leave. During 1978, the year in issue, petitioner was enrolled as a law student at Southern Methodist University School of Law in Dallas, Texas. He received his law degree in 1980. Gulf never dictated in what area of the law petitioner had to concentrate; nor did it ask petitioner to take particular law school courses. Petitioner was entitled to remain on educational leave and receive tuition assistance *415 so long as he received passing grades in the law school courses, which he individually selected to take. Consistent with Gulf's general policies, petitioner was eligible for but not guaranteed reemployment after the termination of his educational leave of absence. Furthermore, petitioner made no commitment regarding reemployment with Gulf.He was not required to return to their employ. Nevertheless, during the summer months of 1978 and during semester breaks, petitioner resumed his work with Gulf as an entry level Land Agent and was paid salary of $5,630.81 during 1978, which was the same amount that any entry level Land Agent would be paid for working the same amount of time. While attending law school during the fall of 1978, petitioner also worked part time for a law firm, for which he received wages of $517. The amount received by petitioner in 1978 from the Gulf Tuition Assistance Program was $3,238, which equaled petitioner's net tuition cost. [2] Petitioner reported none of the $3,238 as income on his 1978 individual income tax return. On audit, respondent determined that the entire $3,238 was gross income to petitioner because it represented compensation for past, *416 present or future services and was therefore not excludable under section 117. OPINION We must decide whether amounts paid to petitioner under the Gulf Tuition Assistance Program are excludable from income under section 117. Section 117(a) provides for an exclusion from gross income for any amount received as a scholarship or fellowship grant. The Code itself does not define the terms "scholarship" or "fellowship grant." However, sections 1.117-3 and 1.117-4, Income Tax Regs., fill this void. Section 1.117-4(c) provides that scholarships or fellowship grants do not include payments which represent either (1) compensation for past, present or future employment services, (2) payments for services that are subject to the direction or supervision of the grantor or (3) payments to enable an individual to pursue study or research that is primarily for the grantor's benefit. The Supreme Court has upheld the validity of this regulation, stating that the definition contained therein comports with the "ordinary understanding of 'scholarships' *417 and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." Bingler v. Johnson,394 U.S. 741, 751 (1969). The regulations are "designed * * * to distinguish relatively disinterested payments made primarily for the purpose of furthering the education of the recipient from payments made primarily to reward or induce the recipient's performance of services for the benefit of the payor." Turem v. Commissioner,54 T.C. 1494, 1505 (1970). Neither party claims that the payments at issue here were for services subject to the direction of the grantor. Although some of respondent's arguments are couched in terms that emphasize how Gulf expected to benefit from providing tuition assistance to its employees, respondent has specifically disavowed reliance on the requirement in section 1.117-4(c), Income Tax Regs., that the payments not be for research or study primarily for the benefit of the grantor. Respondent has based its case solely on the third prong of that regulation--the requirement that the payments not represent compensation for past, present, or future *418 employment services. [3]
The determination of whether particular payments to individuals are intended to be disinterested grants to further the recipient's education rather than compensation for either past or prospective employment services is ultimately a question of fact. In the present case, each party emphasizes different facts involved in petitioner's relationship with Gulf. On balance, we believe the facts favor respondent, and we therefore hold *419 that the payments to petitioner were not excludable under section 117. Respondent's position is that the payments should be viewed as compensation to petitioner because the Gulf Tuition Assistance Program was designed to assure Gulf of a steady supply of qualified employees and to provide an incentive for employees to continue with Gulf in increasingly responsible positions. Gulf does not make tuition assistance grants under this program available to members of the public but only to those regular full-time employees whose potential for advancement with the corporation will be furthered by their taking educational courses. Gulf specifically determined that petitioner's enrollment in law school was relevant to Gulf's operation and that his successful completion of law school promised to improve his present job performance or develop his potential for advancement within Gulf.In the light of this specific determination by petitioner's supervisors, it is not significant that petitioner was advised that a law degree was not a requirement for the position of Land Agent. A law degree may not have been required, but it is clear that Gulf believed that it would help petitioner improve *420 his service to Gulf, whether as a Land Agent or in a different position. A very important factor in this case is that petitioner maintained his employment ties with Gulf while he attended law school. Not only did Gulf continue to make contributions toward petitioner's health and life insurance benefits, but petitioner's leaves of absence applied only during school semesters. During the summer and semester breaks, he resumed work for Gulf as an entry level Land Agent, which was the position he had held before entering law school. His salary as Land Agent was prorated to reflect the actual length of time that he spent working with Gulf in Houston as opposed to attending law school in Dallas. This indicates that Gulf still considered petitioner its employee during 1978. The fact that he was employed part time as a law clerk with a private law firm in Dallas during the fall semester of 1978 has no bearing on whether the payments Gulf made to him were compensation for past or future employment with it. The primary factor emphasized by petitioner is that he was not contractually obligated to continue working with Gulf after his completion of law school and that Gulf also was not *421 obligated to offer employment to him. In a number of cases the presence of an obligation to continue employment with the grantor after completion of educational courses has been relied upon by the courts in determining that payments are not excludable under section 117. E.g., Bingler v. Johnson,supra;Ussery v. United States,296 F.2d 582 (5th Cir. 1961); Harper v. Commissioner,T.C. Memo. 1972-106. However, the absence of a formal commitment to return to work with the grantor corporation does not automatically establish that payments are excludable scholarships or fellowship grants. MacDonald v. Commissioner,52 T.C. 386, 393 (1969). In several cases in which employee-recipients were not contractually obligated to continue employment with the grantor after completion of the educational courses, the courts have found the payments to be compensatory in nature. These cases have found on the particular facts before them that the motive of the corporation in granting the tuition assistance was to insure itself of continued services from capable employees. E.g., Ehrhart v. Commissioner,57 T.C. 872 (1972), *422 affd. 470 F.2d 940 (1st Cir. 1973); Johnson v. Commissioner,T.C. Memo. 1978-90; Kyle v. Commissioner,T.C. Memo. 1972-83. In such cases, payments to the recipient are in the nature of compensation for anticipated future services, and thus cannot be considered fellowships or scholarships within the meaning of section 117.[4]
Olick v. Commissioner,73 T.C. 479 (1979), which is relied upon by petitioner, is clearly distinguishable. The grant in the Olick case was made to an individual who had not been previously employed by the grantor, the State of Alaska. Even though the grant program was motivated by the State's desire to swell the pool of native teachers, we found that this was a "mere hope" harbored by the school system. Olick v. Commissioner,supra at 490. We distinguished Ehrhart v. Commissioner,supra, and MacDonald v. Commissioner,supra, because they, like the case at bar, dealt with programs that were established *423 and tailored to meet the grantor corporation's specific employment needs, were only only to existing employees of the grantor and required contact with the grantor throughout the academic program. Broniwitz v. Commissioner,T.C. Memo. 1968-221, is the other case primarily relied on by petitioner, and in it, too, we found that the grantor corporation "never had more than a hope that petitioner would decide to work for it." 27 T.C.M. at 1093. Moreover, most of the rationale of the Broniwitz case was based upon Johnson v. Bingler,396 F.2d 258 (3d Cir. 1968), which was reversed by the Supreme Court. Respondent has established that the payments to petitioner under the Gulf Tuition Assistance Program were compensation for services. We therefore hold that the payments are not excludable under section 117. Accordingly, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner's total tuition for the year was $3,838 but he also received a grant of $600 through the Texas Tuition Equalization Grant Program.↩
3. Because respondent's argument on brief stresses how Gulf expected to benefit by using its tuition assistance program to retain employees, petitioner claims that respondent has shifted the legal basis for his position. It is clear, however, that the basis for respondent's position has consistently been that the tuition payments under the program were designed to be future, as well as past, compensation to employees whom Gulf expected to retain after they completed their educational courses. It is understandable that much of respondent's language mentions the prospective benefit to the grantor since payments that are compensatory in nature usually benefit the grantor by enabling it to attract or retain competent employees.↩
4. See Johnson v. Commissioner,T.C. Memo. 1978-90; Kyle v. Commissioner,T.C. Memo. 1972-83↩.