BINGLER, DISTRICT DIRECTOR OF INTERNAL
REVENUE *v.* JOHNSON ET AL.

No. 473.   Argued March 3–4, 1969.—Decided April 23, 1969.

*Harris Weinstein* argued the cause for petitioner. With him on the briefs were *Solicitor General Griswold, Assistant Attorney General Walters,* former *Assistant Attorney General Rogovin, Jonathan S. Cohen,* and *Michael B. Arkin.*

*James C. Larrimer* argued the cause and filed a brief for respondents.

MR. JUSTICE STEWART delivered the opinion of the Court.

We are called upon in this case to examine for the first time § 117 of the Internal Revenue Code of 1954, which excludes from a taxpayer's gross income amounts received as "scholarships" and "fellowships." The question before us concerns the tax treatment of payments received by the respondents[1] from their employer, the Westinghouse Electric Corporation, while they were on "educational leave" from their jobs with Westinghouse.

During the period here in question the respondents held engineering positions at the Bettis Atomic Power Laboratory in Pittsburgh, Pennsylvania, which Westinghouse operates under a "cost-plus" contract with the Atomic Energy Commission. Their employment status enabled them to participate in what is known as the Westinghouse Bettis Fellowship and Doctoral Program. That program, designed both to attract new employees seeking further education and to give advanced training to persons already employed at Bettis, offers a two-phase schedule of subsidized postgraduate study in engineering, physics, or mathematics.

---

[1] We refer only to respondents Richard E. Johnson, Richard A. Wolfe, and Martin L. Pomerantz; their wives are parties to this action solely because joint tax returns were filed for the years in question.

Under the first, or "work-study," phase, a participating employee holds a regular job with Westinghouse and in addition pursues a course of study at either the University of Pittsburgh or Carnegie-Mellon University.[2] The employee is paid for a 40-hour work week, but may receive up to eight hours of "release time" per week for the purpose of attending classes.[3] "Tuition remuneration," as well as reimbursement for various incidental academic expenses, is provided by the company.[4]

When an employee has completed all preliminary requirements for his doctorate, he may apply for an educational leave of absence, which constitutes the second phase of the Fellowship Program. He must submit a proposed dissertation topic for approval by Westinghouse and the AEC. Approval is based, *inter alia,* on a determination that the topic has at least some general relevance to the work done at Bettis. If the leave of absence is secured, the employee devotes his full attention, for a period of at least several months,[5] to fulfilling his dissertation requirement. During this period he receives a "stipend" from Westinghouse, in an amount based on a specified percentage (ranging from 70% to 90%) of his prior salary plus "adders," depending upon the size of his family.[6] He also retains his seniority status and receives all employee benefits, such as insurance and stock option privileges. In return he not only must submit periodic progress reports, but under the written agreement that all participants in the program must sign,

---

[2] Formerly Carnegie Institute of Technology.

[3] A maximum of 156 hours of release time per year is allowed.

[4] The Fellowship Program is funded jointly by Westinghouse and the AEC, but the amounts paid to participating employees are channeled through the company's payroll office.

[5] The ordinary leave period is nine months.

[6] Maximum monthly limits are placed on the amounts paid.

also is obligated to return to the employ of Westinghouse for a period of at least two years following completion of his leave.[7]   Upon return he is, according to the agreement, to "assume . . . duties commensurate with his education and experience," at a salary "commensurate with the duties assigned."

The respondents all took leaves under the Fellowship Program at varying times during the period 1960–1962,[8] and eventually received their doctoral degrees in engineering.   Respondents Johnson and Pomerantz took leaves of nine months and were paid $5,670 each, representing 80% of their prior salaries at Westinghouse. Respondent Wolfe, whose leave lasted for a year, received $9,698.90, or 90% of his previous salary.   Each returned to Westinghouse for the required period of time following his educational leave.

Westinghouse, which under its own accounting system listed the amounts paid to the respondents as "indirect labor" expenses, withheld federal income tax from those amounts.[9]   The respondents filed claims for refund, contending that the payments they had received were

---

[7] Respondent Wolfe began his leave at a time when Westinghouse did not require agreement in writing to the two-year "return" commitment.   He was formally advised before he went on leave, however, that he was "expected" to return to Westinghouse for a period of time equal to the duration of his leave, and he in fact honored that obligation.

[8] Respondent Wolfe was on leave from March 1, 1960, to February 28, 1961; respondent Johnson from October 1, 1960, to June 30, 1961; and respondent Pomerantz from November 1, 1961, to July 31, 1962.

[9] Tuition and incidental fees were also paid by Westinghouse, but no withholding was made from those payments, and their tax status is not at issue in this case.   Although conceptually includable in income, such sums presumably would be offset by educational expense deductions.   See Treas. Reg. on Income Tax (1954 Code) § 1.162–5, 26 CFR § 1.162–5.

"scholarships," and hence were excludable from income under § 117 of the Code, which provides in pertinent part:

> "(a) General rule.
>
> "In the case of an individual, gross income does not include—
>
> "(1) any amount received—
>
> "(A) as a scholarship at an educational institution (as defined in section 151 (e)(4)), or
>
> "(B) as a fellowship grant . . . ." [10]

When those claims were rejected, the respondents instituted this suit in the District Court for the Western

---

[10] The entire section reads as follows:

"§ 117. Scholarships and fellowship grants.

"(a) General rule.

"In the case of an individual, gross income does not include—

"(1) any amount received—

"(A) as a scholarship at an educational institution (as defined in section 151 (e)(4)), or

"(B) as a fellowship grant, including the value of contributed services and accommodations; and

"(2) any amount received to cover expenses for—

"(A) travel,

"(B) research,

"(C) clerical help, or

"(D) equipment,

"which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.

"(b) Limitations.

"(1) Individuals who are candidates for degrees.

"In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151 (e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teach-

District of Pennsylvania, against the District Director of Internal Revenue. After the basically undisputed evidence regarding the Bettis Program had been presented, the trial judge instructed the jury in accordance with Treas. Reg. on Income Tax (1954 Code) § 1.117–4 (c), 26 CFR § 1.117–4 (c), which provides that amounts representing "compensation for past, present, or future employment services," and amounts "paid . . . to . . . an individual to enable him to pursue studies or research primarily for the benefit of the grantor," are not exclud-

ing, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

"(2) Individuals who are not candidates for degrees.

"In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151 (e) (4)), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).

"(A) Conditions for exclusion.

"The grantor of the scholarship or fellowship grant is—

"(i) an organization described in section 501 (c) (3) which is exempt from tax under section 501 (a),

"(ii) a foreign government,

"(iii) an international organization, or a binational or multinational education and cultural foundation or commission created or continued pursuant to the Mutual Educational and Cultural Exchange Act of 1961, or

"(iv) the United States, or an instrumentality or agency thereof, or a State, a territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia.

"(B) Extent of exclusion.

"The amount of the scholarship or fellowship grant excluded under subsection (a) (1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151 (e) (4))."

able as scholarships.[11]  The jury found that the amounts received by the respondents were taxable income. Respondents then sought review in the Court of Appeals for the Third Circuit, and that court reversed, holding that the Regulation referred to was invalid, that the jury instructions were therefore improper, and that on the essentially undisputed facts it was clear as a matter of law that the amounts received by the respondents were "scholarships" excludable under § 117.   396 F. 2d 258.

The holding of the Court of Appeals with respect to Treas. Reg. § 1.117–4 (c) was contrary to the decisions of several other circuits—most notably, that of the Fifth

---

[11] "§ 1.117–4. Items not considered as scholarships or fellowship grants.

"The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

.          .          .          .          .

"(c) Amounts paid as compensation for services or primarily for the benefit of the grantor.  (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

"(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

"However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph.  Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant."

Circuit in *Ussery* v. *United States,* 296 F. 2d 582, which explicitly sustained the Regulation against attack and held amounts received under an arrangement quite similar to the Bettis Program to be taxable income.[12] Accordingly, upon the District Director's petition, we granted certiorari to resolve the conflict and to determine the proper scope of § 117 and Treas. Reg. § 1.117–4 (c) with respect to payments such as those involved here. 393 U. S. 949.

In holding invalid the Regulation that limits the definitions of "scholarship" and "fellowship" so as to exclude amounts received as "compensation," the Court of Appeals emphasized that the statute itself expressly adverts to certain situations in which funds received by students may be thought of as remuneration. After the basic rule excluding scholarship funds from gross income is set out in § 117 (a), for instance, subsection (b)(1) stipulates:

> "In the case of an individual who is a candidate for a degree at an educational institution . . . , subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant." [13]

In addition, subsection (b)(2) limits the exclusion from income with regard to nondegree candidates in two re-

---

[12] Generally in accord with *Ussery* are *Reese* v. *Commissioner,* 373 F. 2d 742 (C. A. 4th Cir.); *Stewart* v. *United States,* 363 F. 2d 355 (C. A. 6th Cir.); and *Woddail* v. *Commissioner,* 321 F. 2d 721 (C. A. 10th Cir.). See also *Reiffen* v. *United States,* 180 Ct. Cl. 296, 376 F. 2d 883.

[13] Subsection (b) goes on to except from that limitation situations in which "teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree . . . ." In those situations, scholarship or fellowship funds received for such services are nontaxable. See n. 10, *supra.*

spects: first, the grantor must be a governmental agency, an international organization, or an organization exempt from tax under §§ 501 (a), (c)(3) of the Code; and second, the maximum exclusion from income available to a nondegree candidate is $300 per month for not more than 36 months. Since these exceptions are expressly set out in the statute, the Court of Appeals, relying on the canon of construction that *expressio unius est exclusio alterius,* concluded that no additional restrictions may be put on the basic exclusion from income granted by subsection (a)—a conclusion forcefully pressed upon us by the respondents.

Congress' express reference to the limitations just referred to concededly lends some support to the respondents' position. The difficulty with that position, however, lies in its implicit assumption that those limitations are limitations on an exclusion of *all funds* received by students to support them during the course of their education. Section 117 provides, however, only that amounts received as "scholarships" or "fellowships" shall be excludable. And Congress never defined what it meant by the quoted terms. As the Tax Court has observed:

> "[A] proper reading of the statute requires that before the exclusion comes into play there must be a determination that the payment sought to be excluded has the normal characteristics associated with the term 'scholarship.' " *Reese* v. *Commissioner,* 45 T. C. 407, 413, aff'd, 373 F. 2d 742.

The regulation here in question represents an effort by the Commissioner to supply the definitions that Congress omitted.[14] And it is fundamental, of course, that as

[14] See also Treas. Reg. on Income Tax (1954 Code) §§ 1.117-3 (a), (c), 26 CFR §§ 1.117-3 (a), (c), which set out the "normal characteristics" associated with scholarships and fellowships:

"§ 1.117–Definitions.

"(a) Scholarship. A scholarship generally means an amount paid

"contemporaneous constructions by those charged with administration of" the Code, the Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes," and "should not be overruled except for weighty reasons." *Commissioner* v. *South Texas Lumber Co.,* 333 U. S. 496, 501. In this respect our statement last Term in *United States* v. *Correll,* 389 U. S. 299, bears emphasis:

> "[W]e do not sit as a committee of revision to perfect the administration of the tax laws. Congress

or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to a student to aid him in pursuing his studies. The term also includes any amount received in the nature of a family allowance as a part of a scholarship. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in pursuing his studies where the grantor is motivated by family or philanthropic considerations. If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is remitted by any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship.

.　　　　.　　　　.　　　　.　　　　.

"(c) Fellowship grant. A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to an individual to aid him in the pursuit of study or research. The term also includes any amount received in the nature of a family allowance as a part of a fellowship grant. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in the pursuit of study or research where the grantor is motivated by family or philanthropic considerations."

We are not concerned in this case with distinctions between the terms "scholarship" and "fellowship."

has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code. 26 U. S. C. § 7805 (a). In this area of limitless factual variations, 'it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments.' " *Id.*, at 306–307.

Here, the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial *quid pro quo* from the recipients.

The implication of the respondents' *expressio unius* reasoning is that any amount paid for the purpose of supporting one pursuing a program of study or scholarly research should be excludable from gross income as a "scholarship" so long as it does not fall within the specific limitations of § 117 (b). Pay received by a $30,000 per year engineer or executive on a leave of absence would, according to that reasoning, be excludable as long as the leave was granted so that the individual could perform work required for a doctoral degree. This result presumably would not be altered by the fact that the employee might be performing, in satisfaction of his degree requirements, precisely the same work which he was doing for his employer prior to his leave and which he would be doing after his return to "employment"—or by the fact that the fruits of that work were made directly available to and exploited by the employer. Such a result would be anomalous indeed, especially in view of the fact that under § 117 the comparatively modest sums received by part-time teaching assistants are clearly subject to taxation.[15] Particularly in light of the prin-

---

[15] Cf. 1 J. Mertens, Law of Federal Income Taxation § 7.42, p. 110 (P. Zimet & W. Oliver rev. ed. 1962).

ciple that exemptions from taxation are to be construed narrowly,[16] we decline to assume that Congress intended to sanction—indeed, as the respondents would have it, to compel—such an inequitable situation.[17]

The legislative history underlying § 117 is, as the Court of Appeals recognized, "far from clear." [18] We do not believe, however, that it precludes, as "plainly inconsistent" with the statute, a definition of "scholarship" that excludes from the reach of that term amounts received as compensation for services performed. The 1939 Internal Revenue Code, like predecessor Codes, contained no specific provision dealing with scholarship grants. Whether such grants were includable in gross income depended simply upon whether they fell within the broad provision excluding from income amounts received as "gifts." [19] Thus case-by-case determinations regarding grantors' motives were necessary. The cases decided under this approach prior to 1954 generally involved two types of financial assistance: grants to research or teaching assistants—graduate students who perform research or teaching services in return for their stipends—and foundation grants to post-doctoral researchers. In cases decided shortly before the 1954 Code was enacted, the Tax Court, relying on the "gift" approach to scholarships and fellowships, held that amounts received by a research assistant were taxable

[16] See *Commissioner* v. *Jacobson,* 336 U. S. 28, 48–49; *Helvering* v. *Northwest Steel Rolling Mills, Inc.,* 311 U. S. 46, 49.

[17] The opinion of the Court of Appeals reiterates that the stipends received by the respondents were "reasonable." Those payments approximated, of course, the respondents' previous engineering salaries. In any event, given the court's *expressio unius* reasoning, the source of a limitation based on the "reasonableness" of amounts granted to bona fide students is difficult to identify.

[18] 396 F. 2d, at 263.

[19] Int. Rev. Code of 1939, c. 1, § 22 (b) (3), 53 Stat. 10; see Int. Rev. Code of 1954, § 102.

income,[20] but reached divergent results in situations involving grants to post-doctoral researchers.[21]

In enacting § 117 of the 1954 Code, Congress indicated that it wished to eliminate the necessity for reliance on "case-by-case" determinations with respect to whether "scholarships" and "fellowships" were excludable as "gifts." Upon this premise the respondents hinge their argument that Congress laid down a standard under which all case-by-case determinations—such as those that may be made under Treas. Reg. § 1.117–4 (c)—are unnecessary and improper. We have already indicated, however, our reluctance to believe that § 117 was designed to exclude from taxation all amounts, no matter how large or from what source, that are given for the support of one who happens to be a student. The sounder inference is that Congress was merely "recogni[zing] that scholarships and fellowships are sufficiently unique . . . to merit [tax] treatment separate from that accorded gifts," [22] and attempting to provide that grants falling within those categories should be treated consistently— as in some instances, under the generic provisions of the 1939 Code, they arguably had not been. Delineation of the precise contours of those categories was left to the Commissioner.

Furthermore, a congressional intention that not all grants received by students were necessarily to be "scholarships" may reasonably be inferred from the legislative history. In explaining the basis for its version of § 117 (b)(2),[23] the House Ways and Means Committee stated

---

[20] See, e. g., Banks v. Commissioner, 17 T. C. 1386.

[21] Compare Ti Li Loo v. Commissioner, 22 T. C. 220 (university grant for National Health Service research held taxable), with Stone v. Commissioner, 23 T. C. 254 (foundation grant held nontaxable).

[22] Gordon, Scholarship and Fellowship Grants as Income: A Search for Treasury Policy, 1960 Wash. U. L. Q. 144, 151.

[23] That version provided for the exclusion only of grants that, together with compensation received from the recipient's former

that its purpose was to "tax those grants which are in effect merely payments of a salary during a period while the recipient is on leave from his regular job." [24]   This comment related, it is true, to a specific exception to the exclusion from income set out in subsection (a).   But, in view of the fact that the statute left open the definitions of "scholarship" and "fellowship," it is not unreasonable to conclude that in adding subsection (b) to the statute Congress was merely dealing explicitly with those problems that had come explicitly to its attention—*viz.*, those involving research and teaching assistantships and post-doctoral research grants—without intending to forbid application to similar situations of the general principle underlying its treatment of those problems.   One may justifiably suppose that the Congress that taxed funds received by "part-time" teaching assistants, presumably on the ground that the amounts received by such persons really represented compensation for services performed,[25] would also deem proper a definition of "scholarship" under which comparable sorts of compensation—which often, as in the present case, are significantly greater in amount—are likewise taxable.[26]

---

employer, were less than 75% of his salary for the preceding year. Noting that the House bill would have taxed many modest grants simply because the recipient had no substantial earned income in the previous year, the Senate rejected that formulation and substituted the present $300 per month, 36-month provision of § 117 (b)(2).   See H. R. Rep. No. 1337, 83d Cong., 2d Sess., 17; S. Rep. No. 1622, 83d Cong., 2d Sess., 18.

[24] H. R. Rep. No. 1337, *supra,* n. 23, at 17.

[25] The House version of § 117 (b)(1) taxed only amounts received as payment for teaching and research services.   The Senate amended the provision, however, to include payments for "other services" as well.   See S. Rep. No. 1622, *supra,* n. 23, at 18.

[26] In connection with the question of what Congress may have intended to denote by the terms "scholarship" and "fellowship," it is noteworthy that the House Report stated, "Such grants gen-

In providing such a definition, the Commissioner has permissibly implemented an underlying congressional concern.[27] We cannot say that the provision of Treas. Reg. § 1.117–4 (c) that taxes amounts received as "compensation" is "unreasonable or plainly inconsistent with the . . . statut[e]."[28]

Under that provision, as set out in the trial court's instructions,[29] the jury here properly found that the

erally are of small amount and are usually received by individuals who would have little or no tax liability in any case." H. R. Rep. No. 1337, *supra*, n. 23, at 17.

[27] The Court of Appeals viewed the "primary purpose" of § 117 as the "encourage[ment of] financial aid to education through tax relief." 396 F. 2d, at 262. But while some desire to aid scholarship students no doubt underlay enactment of the statute, that desire must be reconciled with an apparent congressional intent—manifested in the limitations set out in subsection (b)—to tax amounts that represent compensation for services performed. As the text makes clear, we cannot view the Commissioner's attempt to achieve that reconciliation as improper.

[28] The Court of Appeals seems to have recognized that in some circumstances the Commissioner's approach is justified. Its opinion stated:

"A significant commitment by the student in return for a grant would, of course, place that grant outside the category 'scholarship,' at least to the extent of the value of that commitment. For if the grantee had to barter for his stipend, giving full value for it, this arrangement would hardly serve the primary purpose of the § 117 exclusion: to encourage financial aid to education through tax relief." 396 F. 2d, at 262.

It is not clear how this position can be squared with the Court of Appeals' holding that Treas. Reg. § 1.117–4 (c) is invalid. In any event, as we suggest *infra,* we cannot agree with the conclusion of the Court of Appeals that the grants received by the respondents were not "bartered for."

[29] The instructions included, *inter alia,* the following passage:

"You are . . . instructed that, one, any amount of money paid to an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present or future

amounts received by the respondents were taxable "compensation" rather than excludable "scholarships." [30] The employer-employee relationship involved is immediately

employment services, or represents payment for services which are subject to the direction or supervision of the grantor, . . . is not a scholarship or fellowship under the tax laws.

"Two, any amount of money paid to an individual to enable him to pursue studies or research which studies or research are primarily for the benefit of the grantor is not a scholarship under the tax laws."

[30] We thus endorse the decisions of the Fifth and Sixth Circuits in *Ussery* v. *United States,* 296 F. 2d 582, and *Stewart* v. *United States,* 363 F. 2d 355. In *Ussery,* the Court of Appeals for the Fifth Circuit specifically upheld Treas. Reg. § 1.117–4 (c) and held taxable monthly payments received by an employee of the Mississippi Department of Public Welfare who had been given leave to secure a master's degree in social work. The taxpayer there received employee benefits while on leave, and was obligated to return to the department following completion of his studies. *Stewart* involved a similar arrangement under which an employee of the Tennessee Department of Public Welfare received monthly stipends and other benefits during an educational leave of absence but was required to return thereafter to her previous position. See *Reese* v. *Commissioner,* 373 F. 2d 742 (C. A. 4th Cir.), affirming 45 T. C. 407 (student-teacher); *Woddail* v. *Commissioner,* 321 F. 2d 721 (C. A. 10th Cir.) (resident physician; obligated to remain following part-time participation in training program); cf. *Reiffen* v. *United States,* 180 Ct. Cl. 296, 376 F. 2d 883 (relying solely on characterization of payments as "primarily for benefit of grantor"). Several Tax Court decisions point in the same direction, although treatment of various factual situations under § 117 has not been marked by a great deal of consistency. See generally Tabac, Scholarships and Fellowship Grants: An Administrative Merry-Go-Round, 46 Taxes 485 (1968).

The Commissioner has acquiesced in *Evans* v. *Commissioner,* 34 T. C. 720 (see 1965–1 Cum. Bull. 4), which allowed exclusion where, although the taxpayer was obligated to work for the grantor following completion of her studies, there had been no previous employment relationship. See Rev. Rul. 65–146, 1965–1 Cum. Bull. 66. We are informed by the Solicitor General, however, that the *Evans* acquiescence will be modified. See also *Broniwitz* v. *Com-*

suggestive, of course, as is the close relation between the respondents' prior salaries and the amount of their "stipends." In addition, employee benefits were continued. Topics were required to relate at least generally to the work of the Bettis Laboratory. Periodic work reports were to be submitted. And, most importantly, Westinghouse unquestionably extracted a *quid pro quo*. The respondents not only were required to hold positions with Westinghouse throughout the "work-study" phase of the program, but also were obligated to return to Westinghouse's employ for a substantial period of time after completion of their leave.[31] The thrust of the provision dealing with compensation is that bargained-for payments, given only as a *"quo"* in return for the *quid* of services rendered—whether past, present, or future—should not be excludable from income as

*missioner,* P–H 1968 TC Mem. Dec. ¶68,221 (Sept. 30, 1968) (requirement of summer employment with grantor; held excludable).

[31] The contract's provision that employees who avail themselves of educational leave will be assigned duties "commensurate with [their] education and experience," and compensated at rates "commensurate with" those duties, is hardly sufficient to avoid the clear inference that their grants are fully bargained for and in the nature of compensation. The program is featured in Westinghouse's recruiting efforts as a benefit attractive to many potential employees. Moreover, as suggested in the text, participation in the program undeniably means giving up the right to take more remunerative employment elsewhere for a considerable period of time. Had the company modified its program so that the amounts of the "fellowship" grants were spread over the years preceding and following the educational leave—as increments to the respondents' salary, set aside in a company-administered "educational fund"—there could be little doubt that those amounts would have represented compensation. We see no persuasive reason why a different tax result should be reached under Treas. Reg. § 1.117–4 (c) on the actual facts involved here. There is no merit in the respondents' oblique suggestion that payment for *present* services is somehow different, with respect to the question before us, from deferred or anticipatory payments.

"scholarship" funds.[32]   That provision clearly covers this case.

Accordingly, the judgment of the Court of Appeals is reversed, and that of the District Court reinstated.

*It is so ordered.*

MR. JUSTICE DOUGLAS would affirm the judgment for the reasons stated by the Court of Appeals in 396 F. 2d 258.

---

[32] We accept the suggestion in the Government's brief that the second paragraph of Treas. Reg. § 1.117–4 (c)—which excepts from the definition of "scholarship" any payments that are paid to an individual "to enable him to pursue studies or research primarily for the benefit of the grantor"—is merely an adjunct to the initial "compensation" provision:

"By this paragraph, the Treasury has supplemented the first in order to impose tax on bargained-for arrangements that do not create an employer-employee relation, as, for example, in the case of an independent contractor.   But the general idea is the same: 'scholarship' or 'fellowship' does not include arrangements where the recipient receives money and in return provides a *quid pro quo.*"   Brief for Petitioner 22.

The respondents point out that the Internal Revenue Service is considering possible revisions of the Regulations under § 117.   The Solicitor General informs us, however, that although revisions might "conform the Regulations to the results reached" in such cases as *Wells* v. *Commissioner,* 40 T. C. 40, no changes are contemplated with respect to situations such as that involved here.   Reply Brief for Petitioner in support of certiorari 3, n. 2; see Rev. Rul. 65–59, 1965–1 Cum. Bull. 67.