**John E. QUAST and Nancy K. Quast,
Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19636.**

United States Court of Appeals,
Eighth Circuit.

June 23, 1970.

Albert A. Woodward, of Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., for appellants; Lawrence J. Hayes, St. Paul, Minn., on the brief.

Michael B. Arkin, Attorney, Department of Justice, Washington, D. C., for appellee; Johnnie M. Walters, Asst. Atty. Gen., and Lee A. Jackson and Jonathan S. Cohen, Attorneys, Department of Justice, Washington, D. C., and Pa-

trick J. Foley, U. S. Atty., Minneapolis, Minn., on the brief.

Before MATTHES, BLACKMUN * and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

John E. Quast, a medical doctor and his wife, Nancy K. Quast, have appealed from the judgment of the district court dismissing their suit for a refund of Federal income taxes paid for the calendar year 1964. Mrs. Quast is a party only because she filed a joint tax return with her husband for 1964. Hereinafter, Dr. Quast will be referred to as the taxpayer.

The record reveals little, if any, dispute in the relevant facts. Judge Neville has accurately and fully detailed the background giving rise to this controversy in his opinion denying appellants' motion for a judgment n. o. v., or alternatively, for a new trial. The opinion is reported at 293 F.Supp. 56 (D. Minn.1968).

The basic question for determination in the district court was whether the sum of $4,805 [1] paid to taxpayer by the Veterans' Administration in 1964 was a fellowship grant within the meaning of § 117 of the Internal Revenue Code of 1954,[2] and thus not includable in taxpayer's gross income. Under appropriate instructions the jury found that the entire amount in question was not a fellowship.

In this court appellants initially presented two issues for determination: (1) whether the limiting provision of Treas.Reg. § 1.117–4(c), 26 C.F.R. § 1.-117–4(c), was an unlawful attempt by the Commissioner of Internal Revenue to legislate beyond the intention of Congress in enacting § 117 of the Code; [3] (2) whether the court committed prejudicial error in "instructing the jury that it must find that either all or none of the amounts received by appellant [taxpayer] constituted a fellowship excludable from income." [4]

After appellants' original brief had been filed, the Supreme Court in Bingler v. Johnson, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), held that Treas. Reg. § 1.117–4(c) is valid. Thus, appellants' first contention has been laid to rest.

Although a full recital of the operative facts appear in Judge Neville's opinion, a resume of pertinent portions of the evidence will serve to place the remaining issue in proper perspective.

After taxpayer received his medical degree in 1956, he engaged in private practice. Being desirous of obtaining his Master of Science in Physical Medicine and Rehabilitation, he turned to the Veterans' Administration for financial assistance under a program designed to alleviate shortages of specially oriented physicians. The letter issued by the

---

* Circuit Judge Blackmun now an Associate Justice of the Supreme Court did not participate in the disposition of this case.

1. Judge Neville in his memorandum opinion, referred to the amount in controversy as $4,990. This figure also appears in taxpayer's testimony. The complaint, however, alleged that the fellowship amounted to $4,805, and as far as we are able to determine from the record, $4,805 is the correct figure.

2. Pertinent portions of § 117 are reproduced in the district court opinion, 293 F.Supp. at 57, 60.

3. Excerpts from the Regulation, included in the district court's instructions, are set out in note 4 of the court's opinion, 293 F.Supp. at 61.

4. An interrogatory was submitted to the jury reading:
   "Was the amount of $4.990 received by plaintiff and paid by the Veterans Administration for the first six months of 1964 a fellowship and thus 'properly excludable from plaintiff's gross income?'"
   The jury answered, "No." In a colloquy with the court relating to the proposed instructions, counsel for appellants did not object to the all-or-nothing instruction but "suggested a verdict form" permitting the jury to "find the dollar amount of monies received by the plaintiff Dr. Quast in the first six months of 1964 * * * of any fellowship in that period * * *."

Chief Medical Officer of the Veterans' Administration explaining the program stated in part that "due to existing shortages * * * a plan of residency training in Physical Medicine and Rehabilitation has been approved for full-time career physicians in the Veterans' Administration."

On June 30, 1961, appellant, having been accepted for participation in the program, entered into a "CONTRACT FOR FULL-TIME PHYSICIANS * * * TO RECEIVE SPECIALTY TRAINING (CAREER RESIDENCY)." Pertinent provisions of this document are reported in Judge Neville's opinion, 293 F.Supp. at 59. We reproduce only the preamble of the contract.

"Having been accepted for specialty training in Physical Medicine and Rehabilitation Service as a resident at Veterans Administration Hospital Minneapolis 17, Minnesota and for *employment* in the Department of Medicine and Surgery of the Veterans Administration at the hospital as a full-time physician Associate Grade, I desire to receive my residency training contemporaneously with my *employment*. In consideration of the privilege and opportunity of receiving residency training contemporaneously with my *employment* as a full-time physician in the Department of Medicine and Surgery in the Veterans Administration, I agree to the following conditions:" (Emphasis supplied.)

Pursuant to the employment contract appellant entered the service of the Veterans' Administration as a career resident on or about July 1, 1961. At the same time he entered a program leading to the degree of Master of Science in Physical Medicine and Rehabilitation at the University of Minnesota.[5]

Taxpayer testified without dispute that he did clinical work at the Veterans' Administration Hospital in Minnesota and the University of Minnesota Hospital, from July 1, 1961 through June 30, 1964, and that he was at the University Hospital from April 1, 1964, until June 30, 1964. Upon entering the training program at the Veterans' Administration, taxpayer was given an Associate Grade classification and received a beginning salary of $7,560. By reason of merit promotions and cost-of-living raises, taxpayer received a total income of $12,104.12 in 1964 from the Veterans' Administration. The Veterans' Administration withheld $1,273.95 in Federal income taxes in 1964; during the entire period of July 1, 1961, through June 30, 1964, taxpayer accrued 30 days of paid vacation each year and 15 days sick leave each year; taxpayer was covered by group health and life insurance and the Federal Employment Retirement Act.

Reverting to appellants' apportionment theory, we note they emphasize that § 117 of the 1954 Code implicitly recognizes that a part of the amount received may represent a fellowship grant, and a part of the payment may constitute compensation for services rendered. To be sure, § 117(a) (1) (B) and (b) does speak in terms of "any amount" received. But even if we assumed that the Code does authorize a division of the amount paid to the recipient between a fellowship and a salary for services rendered, we are satisfied that the district court properly declined to submit the apportionment issue.

First, as recognized by Judge Neville in his opinion, 293 F.Supp. at 60, appellants tried their case on an all-or-nothing theory. Although they claimed in their 1964 income tax return that $2,400 of the amount received was a fellowship grant, and although their original complaint in this action was couched accordingly, in their amended complaint they abandoned their prior position and asserted that all of the $4,805 constituted a grant and was excludable. In testifying, the taxpayer stated he was claiming that "the entire amount received for the

5. Taxpayer never received his Master's degree. He was, however, certified by the appropriate board in his specialty.

first 6 months of 1964 ($4,990)" was excludable. We also attach some significance to the statement of appellants' counsel made in colloquy with Judge Neville in regard to the instructions that had been given to the jury: "At this time the plaintiffs will renew all of the objections made prior to the final arguments this afternoon. Second, I think the court stated something about $4,990, less $2,400, in its statement of the facts to the jury. I am not sure that is right. I think we are claiming the whole $4,990; not less $2,400."

█ Because of the eleventh-hour attempt by appellants to interpose another theory into the lawsuit, it is not difficult to understand their failure to produce any evidence which would have aided the jury to measure or determine any apportionment. See 293 F.Supp. at 60. In this connection, we are totally unimpressed with appellants' suggestion that they were deprived of the opportunity to argue to the jury that "an amount equal to that paid 'regular residents' was the least amount which constituted a fellowship." Taxpayer was not a regular resident. He entered the Veterans' Administration program as a career resident, he participated as such, and after his training had been completed, he remained in the service of the Veterans' Administration Hospital as a career resident was obligated to do. Taxpayer's status differed in at least two significant respects from that of a regular resident: He received a much larger stipend, in return for which he contractually obligated himself to remain at the Veterans' Administration Hospital for a period of time following conclusion of his residency training. While the work he performed during his residency training may have been similar to that performed by regular residents, none of the parties involved ever contemplated that taxpayer *was* a regular resident during that period of time. Hence, it is wholly anomalous to contend that, as to part of taxpayer's income he was, in effect, a regular resident and as to the rest he was a career resident. We look to the status as intended by the parties and as existing in fact, not to some imaginative half-and-half position existing only as theory in a lawsuit. Not being a regular resident in any respect, it is of no comfort to taxpayer that a regular resident's stipend was held to be excludable under § 117 in Anderson v. United States, 7 AFTR 726 (D.Minn.1960) (not officially reported). Moreover, *Anderson* goes against the grain of Revenue Ruling 59–118, 1959–1 Cum.Bull. 41 [6] and was, in any event, a jury verdict rendered for taxpayer on appropriate submission of an all-or-nothing claim.

█ Recognizing the settled doctrine that ordinarily on appeal the appellant must adhere to the theory on which the case was tried in the lower court, In re Black Ranches, Inc., 362 F. 2d 19, 32 (8th Cir.), cert. denied *sub nom.* Brando v. Black, 385 U.S. 990, 87 S.Ct. 596, 17 L.Ed.2d 450 (1966), Kirk v. St. Joseph Stock Yards Co., 206 F.2d 283, 287 (8th Cir. 1953), and cases there cited, we believe that appellants' all-or-nothing course of action in the district court sufficiently answers their plea that the jury should have been allowed to apportion.

█ Moreover, in our view, the case-law fully supports the judgment of the district court. Bingler v. Johnson, *supra,* implicitly at least supports the conclusion that the entire amount paid to taxpayer was "compensation for past, present or future employment services * * *." 26 C.F.R. § 1.117–4(c). Woddail v. Commissioner, 321 F.2d 721 (10th Cir. 1963), on strikingly similar facts, is direct authority for the action of the district court on the apportionment issue. Also supporting the court's

6. After noting the conflict between *Anderson* and Rev.Rul. 59–118 and pending amendment of the tax regulations, the Internal Revenue Service suspended the effect of the ruling in 1965. Rev.Rul. 65–59, 1965–1 Cum.Bull. 67.

conclusion are Stewart v. United States, 363 F.2d 355 (6th Cir. 1966), and Ussery v. United States, 296 F.2d 582 (5th Cir. 1961).[7] The issue in the Tax Court case of Reese v. Commissioner of Internal Revenue, 45 T.C. 407 (1966), aff'd per curiam, 373 F.2d 742 (4th Cir. 1967), centered on whether the amount received from the Board of Education of Baltimore County, Maryland, by petitioner for her services as a substitute teacher was excludable from her gross income under § 117 of the 1954 Code. In an illuminating analysis of the statute and the regulations, Judge Tannenwald rejected petitioner's claim. See also Bonn v. Commissioner of Internal Revenue, 34 T.C. 64 (1960).

Further discussion is unnecessary. It is sufficient to state that upon a careful canvass of the whole record, we concur in Judge Neville's summarization:

> "It seems clear to the court that a jury well could find that plaintiff received a salary for work he was employed to do and that it was not the intent of the parties, and certainly not that of the Veterans Administration that such payment should be considered as a fellowship or scholarship. The above quoted excerpts from exhibits seem clearly sufficient to have warranted the jury's finding, if not to have compelled it. It is true that the work plaintiff was doing at the Veterans Administration in tending patients was a credit toward his potential degree. Undoubtedly in many institutions of higher learning, certain vocational or other work which a student may do as an employee in commercial industry constitutes actual experience and credit is given therefor by the educational institution. Such does not necessarily make any payment received for such work a scholarship or fellowship, however." 293 F.Supp. at 59–60.

The judgment is affirmed.

7. *Stewart* and *Ussery* were specifically endorsed by the Supreme Court in Bingler v. Johnson, *supra* 394 U.S. at 756, 89 S.Ct. 1439 n. 30.