STEPHEN W. AND GAYLE G. HALES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hales v. Commissioner
Docket No. 1513-77.
United States Tax Court
T.C. Memo 1978-221; 1978 Tax Ct. Memo LEXIS 295; 37 T.C.M. (CCH) 946; T.C.M. (RIA) 78221; June 12, 1978, Filed Stephen W. Hales, pro se. Alice Gresham, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT *296 AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 129.59 in petitioners' Federal income tax for the year 1973. The only issue for decision is whether petitioner Stephen W. Hales is entitled to exclude from gross income as a scholarship or fellowship grant under section 117 [1] the amount of $ 1,800 he received in 1973 while serving as a pediatric resident at the Good Samaritan Hospital. FINDINGS OF FACT Some of the facts are stipulated and are so found. Stephen W. Hales (hereinafter referred to as petitioner) and Gayle G. Hales were legal residents of New Orleans, Louisiana, when they filed their petition in this case. Their joint Federal income tax return for 1973 was filed with the District Director of Internal Revenue at Phoenix, Arizona. Petitioner graduated from the University of Utah in May 1973 with a medical degree. From July 1, 1973, through December 31, 1973, he was a first year pediatric resident [2] at Good Samaritan Hospital (hereinafter sometimes referred to as the hospital), Phoenix, Arizona. During that time the petitioner *297 participated in the Phoenix Hospitals Affiliated Pediatric Program (PHAPP), a program accredited by the American Medical Association Residency Review Committee leading to medical licensure and certification by the American Board of Pediatrics. The PHAPP program trained residents in several health care facilities in the Phoenix area. They provided fulltime pediatric supervisors to work with PHAPP residents at each hospital, assisting residents with rounds, conferences, lectures, research, case studies and evaluation. Although PHAPP was a separate entity, it had a representative from each of the five participating hospitals, including Good Samaritan Hospital, on its governing board. To be accepted as a first year resident at Good Samaritan Hospital, petitioner was required to sign an Internship and Residency Agreement.He was paid by a fixed schedule of compensation based on experience as a resident without regard to financial aid. Good Samaritan Hospital paid petitioner $ 4,391.89 in 1973 at the rate of $ 750 per month from which *298 he excluded $ 1,800 from gross income. The hospital continued to pay his stipend during his entire residency. Of the 93 residents paid by the hospital in 1973, seven were under the PHAPP program. PHAPP provided five to six hospital staff members to supervise these seven residents. Incoming patents to Good Samaritan Hospital were admitted by a private physician who worked with a resident to obtain a patient history and physical exam. Approximately thirty to forty pediatric patients were in the hospital at any one time. Residents saw approximately 50 to 80 percent of these patients. During 1973 petitioner was assigned at Good Samaritan Hospital as follows: Dates
Assignment
July 1 - September 23
Pediatrics Ward
September 24 - October 31
Newborn Unit
November 1 - November 20
Emergency Room
November 21 - November 30
Vacation
December 1 - December 31
Pediatric Out-patient
Clinic His typical daily schedule included rounds, seminars, and conferences in different medical areas. As a resident the petitioner examined and diagnosed patients, prescribed drugs and medicine, conducted pediatric research, and spent every fourth or fifth night at the hospital *299 on call in pediatrics or the newborn nursery. It was not customary for a staff physician to spend the night at the hospital. While in the nursery petitioner performed nasal tracheal intubation and resuscitation of distressed newborns, supervised the care of premature newborns and children on ventilators and directed fluid and oxygen therapy. In addition, petitioner was assigned to the emergency room for one month in 1973 and participated in the out-patient clinic where he performed routine patient care services. When he was not on call, petitioner spent approximately 8 to 10 hours daily at the hospital. During the second part of his residency petitioner spent time away from Good Samaritan Hospital visiting other hospitals and medical centers, but in 1973 he was only assigned to that one participating hospital. Good Samaritan paid him for the entire period covered by the residency training agreement and withheld social security and withholding taxes from his checks. Perquisites provided to petitioner by Good Samaritan Hospital during his residency included uniforms, liability insurance and health care services for him and his family. Petitioner and his family were also *300 provided free meals while he was on duty. During his second year of residency the Veterans' Administration approved the PHAPP residency program for purposes of awarding educational benefits to qualified veterans. They determined that petitioner was eligible and provided him with a stipend. Residents at Good Samaritan Hospital are appointed on an annual basis and are not required to perform future services at the hospital after completing the PHAPP program. Petitioner was awarded a certificate of service by PHAPP as Pediatric Intern during the twelve months preceding June 30, 1974. OPINION Section 117(a) generally provides an exclusion from gross income for scholarship or fellowship grants. Since the petitioner was not a candidate for a degree, section 117(b)(2)(B) restricts the exclusion to an amount equal to $ 300 times the number of months for which the petitioner received amounts under a scholarship or fellowship grant during the taxable year. Fellowship grants are amounts paid to an individual to enable him to pursue studies or research. Section 1.117-3(c), Income Tax Regs. Scholarships are generally amounts "paid or allowed to, or for the benefit of, a student, *301 whether an undergraduate or a graduate, to aid such individual in pursuing his studies." Section 1.117-3(a), Income Tax Regs. With respect to individuals who are not candidates for degrees, section 1.117-4(c), Income Tax Regs., excludes from the definition of fellowship or scholarship any amount which "represents either compensation for past, present, or future employment services or represents payment for services which are subject to the * * * supervision of the grantor." The Supreme Court of the United States specifically approved these regulations in Bingler v. Johnson,394 U.S. 741, 751 (1969), and stated that excludable fellowships are "relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quidproquo from the recipients." Despite the valuable instruction inherent in medical internship and residency programs, several Courts of Appeals have held that payments to interns and residents under facts and circumstances similar to the payments made in this case are compensatory and are not excludable from taxable income under section 117. See Birnbaum v. Commissioner,474 F.2d 1339 (3d Cir. 1973), *302 affg. without published opinion T.C. Memo. 1971-231; Hembree v. United States,464 F.2d 1262 (4th Cir. 1972); Parr v. United States,469 F.2d 1156 (5th Cir. 1972); Wertzberger v. United States,441 F.2d 1166 (8th Cir. 1971); Quast v. United States,428 F.2d 750 (8th Cir. 1970). The same view has been taken by this Court. See Weinberg v. Commissioner,64 T.C. 771, 776-77 (1975), and Fisher v. Commissioner,56 T.C. 1201 (1971). Petitioner earnestly and articulately seeks to distinguish his case from the general treatment accorded to interns and residents. He premises his argument on the educational foundation, activities and control provided by the PHAPP program in lieu of the traditional relationship between hospital and resident. He maintains that the education under the PHAPP program supercedes the medicinal benefit derived from these activities so as to render these benefits incidental to his primary educational goal of licensure as a doctor. Petitioner contends that, because section 117 does not disqualify a recipient from excluding a portion of a stipend for mere *303 incidental benefit to a grantor, he should be permitted an educational deduction under this section. To bolster his claim petitioner relies on those activities he performed as a resident that were intrinsic to his pediatric education and that differed from standard hospital residency techniques. Among those differences was the ultimate responsibility exercised by the PHAPP educational program, especially the extensive PHAPP supervision within the hospital and the PHAPP staff's accountability for evaluation rather than any hospital direction and control. Petitioner also points to the extensive time spent in research, rotation of hospitals, PHAPP conferences and seminars, the lack of routine hospital chores, and the fact that the hospital could have functioned as well without the PHAPP residents who were under the exclusive control of staff doctors and who had no ultimate authority for patient care. Although petitioner sincerely believes his particular circumstances are within the purview of the section 117(b)(1) exception, the threshold question which cannot be ignored is whether the payments are characteristic of a scholarship or fellowship grant which would be excluded in the *304 first instance under section 117(a). See Brubakken v. Commissioner,67 T.C. 249, 254 (1976). Petitioner's reliance on the independence of the PHAPP program is unpersuasive and, in essence, begs the question. First, we are not convinced that the grantor relinquished all direction and control to PHAPP's educational program. Good Samaritan Hospital and the other participating hospitals had a degree of control in the PHAPP program by virtue of their representation on its governing board. Second, the degree and control of educational activities do not detractfrom the substantial services rendered by petitioner to Good Samaritan Hospital, the grantor, whose primary purpose is the delivery of health care services to patients. Petitioner diagnosed patients, was assigned to the emergency room where he cared for pediatric as well as non-pediatric patients, was on call every fourth or fifth night, performed physical examinations on patients, took patient histories and prescribed drugs and medicine. He also performed nasal tracheal intubation and resuscitation of distressed newborns, supervised the care for premature newborns and children on ventilators and directed fluid *305 and oxygen therapy. He spent at least eight to ten hours per day at the hospital and participated in the rounds required of all residents in the program. The predominance of educational activities fundamental to the PHAPP program on which petitioner relies does not negate the intrinsic nature of patient care at the hospital. The issue remains whether the payments he received were compensation for services rendered. As stated in Proskey v. Commissioner,51 T.C. 918, 925 (1969): There can be no serious doubt that work as a resident physician provides highly valuable training, particularly in preparing for specialties in the various fields of medicine. Yet virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession. * * * Petitioner was appointed to the residency program on an annual basis and his pay was dependent upon length of service rather than financial need. Withholding and social security taxes *306 were withheld from his pay. These facts have also been considered as indicia of employee status. Rosenthal v. Commissioner,63 T.C. 454, 460 (1975). Moreover, fringe benefits received by petitioner during his residency were similar to those customarily accorded employee physicians. See Weinberg v. Commissioner,supra. The hospital provided petitioner with uniforms, liability insurance, health care services for himself and his family, meals while on duty at the hospital, and paid vacations. In contravention of employee status, petitioner contends that he is also a student because he is recognized in that status by the Veterans' Administration and the National Labor Relations Board (NLRB). We find this argument to be without merit. The administrator of the Veterans' Administration Department of Medicine and Surgery is authorized to appoint qualified persons to medical residencies and to prescribe the conditions of their "employment." 38 U.S.C. § 4101. He is authorized to carry out a program of education to provide complete hospital and medical services for veterans only to the extent that such a program does not *307 interfere with medical care. 38 U.S.C. § 4101. The educational benefits are auxiliary to this main purpose. Bretz v. Commissioner,T.C. Memo. 1978-54. Petitioner's student analogy to the decision of the NLRB [2] that certain hospital interns and residents are not employees for collective bargaining purposes is also inapposite. Classification or definition as an employee under the labor laws is not controlling in tax cases which are decided under the provisions of the Internal Revenue Code of 1954. Bretz v. Commissioner,supra.
Based on the evidence in this record, we hold that the payments received by petitioner in 1973 from the Good Samaritan Hospital constituted compensation for present services subject to the direction of the grantor. Consequently, the petitioner is not entitled to exclude any amount as a scholarship or fellowship grant under section 117. We want to emphasize a final observation. The issue of whether amounts paid to interns, residents or other neophyte health professionals are excludable as scholarship or fellowship *308 grants has frequently been considered by this Court over the past nine years since the Supreme Court's decision in Bingler v. Johnson,supra. There is little to distinguish the vast majority of these cases from one another except (1) the particular specialty involved or (2) the identity of the grantor of the "stipend". Nevertheless, usually through the misguided direction of medical publications, young physicians are continually seeking "scholarship" exclusions for their salaries, and press in case after case identical contentions upon this Court -- all to no avail.This case, like the vast majority of so-called "stipend" cases, is neither black nor white. But one fact which has always been fatal to a taxpayer's claim for "scholarship" treatment -- the providing of extensive services which materially benefit the grantor -- is once again present in the instant case. The persistence prevalent in cases of this type will not cause this Court to depart from the clear course it has followed for nearly a decade. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Petitioner explained that most post-doctoral graduates today move directly into a specialized residency immediately following medical school.↩
2. Cedars-Sinai Medical Center,223 N.L.R.B. No. 57↩ (1976).