ANTHONY Y. TSOU, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tsou v. Commissioner
Docket No. 9229-77.
United States Tax Court
T.C. Memo 1980-100; 1980 Tax Ct. Memo LEXIS 485; 40 T.C.M. (CCH) 56; T.C.M. (RIA) 80100; March 31, 1980, Filed Anthony Y. Tsou, pro se. John C. McDougal, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined deficiencies in petitioner's Federal income tax for the taxable years 1973 and 1974 in the amounts of $225.12 and $236, respectively. The sole issue is whether petitioner is entitled to exclude $1,800 per year *486 from his 1973 and 1974 gross income as fellowship grants under section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner Anthony Y. Tsou (petitioner) resided in Arlington, Virginia, at the time the petition was filed herein. Petitioner filed his 1973 and 1974 Federal income tax returns with the Internal Revenue Service Center, Memphis, Tennessee. After graduating from medical school, petitioner embarked upon a one-year residency in pediatrics at the District of Columbia General Hospital (hospital) in Washington, D.C. (a nonprofit city teaching hospital). He entered into a written agreement with the hospital which covered the period of his residency from July 1, 1973 through June 30, 1974. In this agreement, petitioner acquiesced to the following: I understand that during this Residency my services will be available to the Hospital according to schedules prepared by the Medical Educators and that I am subject to all rules and regulations governing professional employees of this *487 Hospital. [Emphasis supplied.] With respect to this agreement, the hospital paid petitioner $5,134.04 in 1973 and $7,331.48 in 1974. From these amounts the hospital withheld for taxes and the payment of social security taxes. Petitioner also received two weeks paid vacation leave and hospitalization insurance. The payments made by the hospital to its residents would increase each year and applied uniformly to all residents, notwithstanding their financial need. Under this residency program, petitioner performed various duties for the hospital. He treated patients in the hospital wards and the out-patient clinic. The hospital assigned him to work one month at the Columbia Hospital for Women. In addition, petitioner also instructed the junior residents (interns) as well as medical students from Howard University in Washington, D.C. Petitioner worked between 76 and 104 hours per week while in the residency program. On his 1973 and 1974 returns petitioner excluded $1,800, as an itemized deduction, from the respective amounts received from the hospital, contending that such amounts represented fellowship grants. Respondent determined that these amounts were improperly *488 excluded for 1973 and 1974, since petitioner failed to establish that such sums qualified as bona fide fellowship grants for purposes of section 117. OPINION Once again this Court is called upon to decide the ever recurring question of whether payments received by a neophyte physician in a residency program are properly excludable under section 117(a)[2] as fellowship grants. A fellowship *489 grant is specifically excluded from gross income under section 117(a)(1)(B). The exclusion is limited, in the case of a taxpayer who is not a candidate for a degree, to $300 per month for a maximum period of 36 months. In the instant case, petitioner excluded $300 per month for the last six months of 1973 and $300 per month for the first six months of 1974 on the assumption that the amounts paid by the hospitalgrantor qualified as legitimate fellowship grants under section 117. While the statute is silent as to what precisely qualifies as a legitimate fellowship grant, respondent's regulations are explicit as to those payments which do not rise to the level of a bona fide fellowship grant. In essence, a fellowship grant is generally an amount paid to a recipient to assist him in the pursuit of study or research, if the primary purpose of the study or research is to further the education and training of the recipient and if the payments are not intended to compensate him for services. Sec. 1.117-4(c), Income Tax Regs. A fellowship grant is not therefore *490 an amount which represents either compensation for past, present, or future employment services or represents payments for services which are subject to the direction or supervision of the grantor. Sec. 1.117-3(c), Income Tax Regs.
In Bingler v. Johnson,394 U.S. 741 (1969), the United States Supreme Court upheld the validity of these regulations.Therein, the Supreme Court found that these regulations reflected "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." (Emphasis supplied.) Bingler v. Johnson,supra at 751. Several years later, in Hembree v. United States,464 F. 2d 1262, 1265 (1972), the Fourth Circuit Court of Appeals, wherein appeal of this decision will lie, followed the Bingler quid pro quo test for fellowship grants, to wit: In considering and sustaining the validity of Treasury Regulation 117-4(c) * * *, the Supreme Court bypassed discussion of the "primary purpose" dialogue and bluntly stated that "the definitions supplied *491 by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." The clear import of this language is that if there is any substantial quid pro quo, i.e., compensation for services, the payments cannot qualify for exclusion from income as "fellowship" funds. * * * The case at hand is not sui generis. There is a virtual plethora of cases dealing with residents and interns who have attempted to exclude payments received by them in connection with their residencies and internships under the label of fellowship grants. From these many cases at least one general principle has emerged: Payments received in return for substantial quid pro quo services to the hospital are not fellowship grants. See Birnbaum v. Commissioner,474 F. 2d 1339 (3d Cir. 1973), affg. without *492 published opinion a Memorandum Opinion of this Court; Parr v. United States,469 F. 2d 1156 (5th Cir. 1972); Hembree v. United States,464 F. 2d 1262 (4th Cir. 1972); Quast v. Commissioner,428 F. 2d 750 (8th Cir. 1970); Adams v. Commissioner,71 T.C. 477 (1978); Brubakken v. Commissioner,67 T.C. 249 (1976); Weinberg v. Commissioner,64 T.C. 771 (1975); Rosenthal v. Commissioner,63 T.C. 454 (1975); Dietz v. Commissioner,62 T.C. 578 (1974); Moll v. Commissioner,57 T.C. 579 (1972); Fisher v. Commissioner,56 T.C. 1201 (1971); Anderson v. Commissioner,54 T.C. 1547 (1970). Applying the quid pro quo test to the facts at hand, we think it is quite evident that the hospital required a substantial quid pro quo from petitioner in return for the payments made to him. As a resident in pediatrics, petitioner rendered valuable services to the hospital. Petitioner testified that he treated patients in the hospital wards and the out-patient clinic. In addition, he instructed junior residents *493 and medical students assigned to the hospital. He also signed a residency agreement which obligated petitioner to make available his services to the hospital according to the schedules that it prepared. The medical staff supervised petitioner's work and even rotated him to the Children's Hospital and the Columbia Hospital for Women for respective one-month periods. While at the Children's Hospital, petitioner was required to be on call 24 hours a day. Thus, the hospital's payments to petitioner enabled it to gain a direct substantial benefit. Absent such medical residents, the hospital would have been required to obtain medical staff from some other employment source. The facts of the case at bar also comport with the primary purpose language in the regulations. At trial petitioner testified that the primary purpose of his residency was to obtain requisite post-graduate training. [Tr. 17] Merely because a young doctor considers his work educational or necessary training in his profession does not render the payments he receives noncompensatory. Fisher v. Commissioner, 56 T.C. 1201, 1215 (1971); *494 Proskey v. Commissioner, 51 T.C. 918, 925 (1969). If such were the case, the neophyte in practically and occupation, such as the lawyer or accountant, could argue that his respective clerkship or internship after graduation represented post-graduage training and thereby seek exclusion of payments received from a legitimate organization described in section 117(b)(2)(A). Furthermore, the relevant purpose envisioned by the regulations is the purpose for which the payments are made. Parr v. United States, 469 F. 2d 1156, 1158 (5th Cir. 1972). It is clear from the record before us that the primary purpose of the payments was to secure petitioner's services. This is evident from the direction and supervision exercised by the hospital over petitioner. Therefore, under either the quid pro quo test of Bingler v. Johnson, supra, or the primary purpose language of section 1.117-4(c), Income Tax Regs., we find that the hospital's payments to petitioner are taxable to him. We cannot overlook the fact, as petitioner apparently does, that the payments have several indicia of a compensatory nature in addition *495 to the extent of services rendered. Petitioner had contracted to be subject to all the rules and regulations governing professional employees of the hospital. Payments made to petitioner and all the other residents were uniform; financial need was not a consideration. See Dietz v. Commissioner, 62 T.C. 578 (1974); Proskey v. Commissioner, 51 T.C. 918 (1969). In addition to the agreed upon emoluments, petitioner received paid vacation leave and hospitalization insurance as fringe benefits. Such benefits are further indicia of an employee-employer relationship. Weinberg v. Commissioner, 64 T.C. 771, 778 (1975); Rosenthal v. Commissioner, 63 T.C. 454, 460 (1975). Finally, the hospital treated petitioner as an employee by withholding FICA, Federal and state taxes from the amounts it paid him. Adams v. Commissioner, 71 T.C. 477, 487 (1978). Petitioner raises a further argument. He contends that this Court should consider the fact that the National Labor Relations Board (NLRB) ruled in 1976 that medical residents and interns were not employees, but students. Petitioner has not filed a brief, *496 but relies on a seven-page copy of a brief filed by the Association of American Medical Colleges with the National Labor Relations Board. In this "amicus curiae" brief, so characterized by petitioner, the argument is raised that the term employees in the National Labor Relations Act does not encompass medical residents and interns for purposes of defining a collective bargaining unit. While petitioner has chosen not to direct out attention to Cedars-Sinai Medical Center, 223 NLRB No. 57 (1976), wherein, for collective bargaining purposes, medical residents and interns are to be considered students rather than employees, we conclude from the submission of the "amicus" brief and testimony offered by petitioner that he was alluding to that case. We are of the opinion that the findings of the NLRB are not binding on this Court and its determinations have no bearing upon the tax issues here involved. [3]Guaranty State Bank of Greenville, Tex. v. Commissioner, 12 B.T.A. 543 (1928). *497 From all of the above we hold that the amounts here in issue are not excludable from petitioner's income as fellowshio grants for the taxable years involved. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as in effect during the years in question.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule.--In the case of an individual, gross income does not include-- (1) any amount received-- (A) as a scholarship at an educational organization (as defined in section 151(e)(4)) (B) as a fellowship grant, including the value of contributed services and accommodations; and (2) any amount received to cover expenses for-- (A) travel, (B) research (C) clerical help, or (D) equipment, which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.↩
3. See Woodling v. Commissioner, T.C. Memo. 1976-391↩