GEORGE M. and JOY R. TOWNS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Towns v. Commissioner
Docket No. 6748-72.
United States Tax Court
T.C. Memo 1974-140; 1974 Tax Ct. Memo LEXIS 179; 33 T.C.M. (CCH) 632; T.C.M. (RIA) 74140; June 3, 1974, Filed. George M. Towns and Joy R. Towns, pro se. Samuel W. Graber, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies *180 in the Federal joint income tax return of petitioners for the taxable years 1968 and 1969 in the amounts of $967.49 and $1,397.54, respectively. Due to concessions by the parties, the sole issue for our decision is whether certain amounts of monies received by Joy R. Towns in each of the years 1968 and 1969 from Methodist Hospital pursuant to an optional research program in which she participated during her residency is excludable from income as a fellowship grant under the provisions of section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated by the parties. Such facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners George M. and Joy R. Towns are husband and wife. They filed timely joint Federal income tax returns on the cash method of accounting for the taxable years 1968 and 1969. At the time of the filing of the petition herein, petitioners' place of residence was Dallas, Texas. George M. Towns is a party to this action only by virtue of having filed a joint return with his wife for the years in *181 question. Further references to "petitioner" will therefore only refer to Joy R. Towns. During each of the years in question, petitioner was a physician licensed to practice medicine in the State of Texas. She had graduated from the University of Texas Southwestern Medical School in 1962. After completing 2 years of internship, she engaged in private practice until 1967. In 1967, petitioner was employed as a resident in internal medicine by Methodist Hospital, Dallas, Texas (hereinafter referred to as "Methodist"). Methodist, an organization described in section 501(c) (3), is exempt from tax under section 501(a). She remained at Methodist until June 30, 1969, at which time she transferred to Parkland Hospital in Dallas to continue her residency. During 1968 and the first half of 1969, petitioner received a stipend of $300 per month from Methodist. Petitioner has conceded such amounts were compensation for services rendered and includable in income. In addition, she received $50 per month for the first 6 months of 1968 and $100 per month for the remainder of her stay at Methodist for her participation in the hospital's Optional Research Program (hereinafter referred *182 to as "ORP"). The annual increment in pay scale was based on the years of residency completed. Neither the initial sum nor the subsequent increments had any relationship to the participant's financial needs. The funds used to pay both the residents' salaries and the amounts advanced under ORP were derived from fees charged patients by Methodist for care and treatment. The residents were notified of the program's availability only by word of mouth. A resident wishing to participate in the program selected a topic in consultation with the director of training for his particular specialty. The topic generally related to and supplemented his normal clinical duties, as was the case with petitioner. To be eligible, the resident had to submit the title of his topic to the director of the Medical Education Office by July of each year. A manuscript suitable for publication was required the following June, and a 6-month progress report was due during the interim. Selection of a new or different topic each July was not mandatory, however, and some participating residents, including petitioner, expanded their topics or projects to cover their entire residency program. Twice annually, *183 Methodist publishes the "Bulletin of the Medical Staff" (hereinafter referred to as the "Bulletin"). The Bulletin is a primary vehicle for printing and publishing original research for the hospital's medical staff, including attending staff and residents. In addition to enhancing its reputation within the local community, it also helps fulfill one of the well known objectives of the hospital, the conduct of research with respect to health care. [2] Methodist is one of the few training hospitals in the country which has an in-house research bulletin. The sophistication of the Bulletin is well established. Of the 39 articles published in the Bulletin between 1968 and 1970, 19 were authored or coauthored by residents. Although participation in the ORP is optional, Methodist strongly encourages its residents to sign up. It considers the program a necessary and essential part of each doctor's residency training. During the periods in question, all residents in the standard residency programs at Methodist except one participated in ORP. There were approximately *184 24 residents at the hospital during 1968 and 21 during the first half of 1969. ORP also had the effect of curtailing any additional employment on the part of the residents resulting in their being physically more alert in serving the hospital's patients. Methodist did not withhold any Federal income taxes from the payments made to the residents under ORP. It was the hospital's position that these payments were excludable since the program was designed to provide positive motivation for undertaking a research problem and not as a supplement to the resident's normal salary. The Director of Medical Education at Methodist, Dr. Danhof, testified that he saw no immediate benefit accruing to the patients as a result of ORP projects since at publication, most were still in the theoretical stages. The effect of the research took time to flow down to the clinical level. However, he did not deny that the research projects sometimes helped shape future attitudes and policies of the hospital toward its patients. Since 1971, Methodist has discontinued its policy of paying a separate stipend for participation in ORP. Instead, the program was merged into the residents' overall medical training, *185 although still remaining optional. An upward adjustment in the salaries paid to the residents was made to make up for the discontinuance of the program. Factors of inflation were also taken into account. OPINION The sole issue for our decision is whether the amounts received by petitioner from Methodist in 1968 and 1969 under ORP were excludable from income as "fellowship grants" under section 117. Section 117 excludes from gross income any amount received as "fellowship grant." The statute itself fails to define the meaning of such term. Section 1.117-3(c), Income Tax Regs., however, defines "fellowship grant" as "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Section 1.117-4(c), Income Tax Regs., further provides that amounts paid as compensation for services or primarily for the benefit of the grantor are not to be considered as fellowships for purposes of section 117: (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies *186 or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship *187 grant. The Supreme Court in Bingler v. Johnson, 394 U.S. 741, 751 (1969), upheld the validity of these regulations as reflecting "the ordinary understanding of "scholarships' and "fellowships' as relatively disinterested, "no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." In Rev. Rul. 72-469, 1972-2 C.B. 78, the respondent further ruled that amounts received by a resident participating in an optional research program at a hospital are not excludable from gross income as a scholarship or fellowship grant under section 117(a). Of course, the respondent's position for the years before the Court must be considered without regard to his subsequent ruling. Respondent argues that the stipend was paid to enable petitioner to pursue research or studies primarily for the benefit of the grantor, Methodist, or alternatively that the payments represented additional compensation to petitioner for services rendered. Petitioner contends that the stipend was paid primarily to aid her to pursue her research and whatever benefits the hospital may have derived from such research were clearly incidental. In our opinion, *188 the petitioner has failed to establish the essential requirements for a tax-exempt scholarship or fellowship grant as defined by the Supreme Court in Bingler v. Johnson, supra, which in substance approved the respondent's regulations as a proper interpretation of the law.
Neither the initial sum nor the annual increments paid to residents participating in ORP have any relationship to the participant's financial needs. This has been one of the hallmarks of fellowship grants. George L. Bailey, 60 T.C. 447 (1973); Aloysius J. Proskey, 51 T.C. 918 (1969). The annual increments in stipend were based on the number of years of residency the participant has completed. Clearly the level of the stipend was directly related to the value of the resident's research which increased with experience. Although Dr. Danhof was of the opinion that the benefits of ORP had no direct and immediate affect on the clinical level, he did not deny that the program sometimes helped shape future attitudes and policies of the hospital towards its patients. Moreover, the hospital derived an additional benefit from ORP by its reduction of other types of work which might *189 result in the diminution of the physical capacity of the residents to service its patients. The monthly payments received by petitioner were more in the nature of compensation for services rendered than of a fellowship grant. We cannot accept petitioner's view that the benefits accruing to Methodist from ORP were only incidental. The Bulletin was an official publication of Methodist. Not only did the publication enhance the prestige of the hospital, but it also served to inform its staff, and the medical profession, of the results of research carried on by its physicians and employees. A participant in the ORP program, and all save one of the residents participated, was required to select a project for research approved by his supervising physician and ultimately to submit a manuscript thereon suitable for publication. The resident was paid for doing this job, which was part of the "business" of the hospital. We failed to perceive any distinction between this, and any other paid contributor to a scientific journal. The amounts received by the resident represented additional compensation. In accordance with the above, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Methodist's charter was amended in January 1969 to make this one of the hospital's officially stated objectives. ↩