CARL H. NAMAN AND MARY CLEO NAMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Naman v. Commissioner
Docket No. 1603-72.
United States Tax Court
T.C. Memo 1974-157; 1974 Tax Ct. Memo LEXIS 161; 33 T.C.M. (CCH) 681; T.C.M. (RIA) 74157; June 18, 1974, Filed. *161 Petitioner, a resident physician in surgery at the Medical College of Georgia, received payments from the Medical College and the V.A. Hospital during 1969. Held, petitioner may not exclude any portion of these payments from his gross income as scholarship or fellowship grants. Sec. 117, I.R.C. 1954. Carl H. Naman, pro se. Maurice W. Gerald, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1969, in the amount of $664.75. The issue is whether petitioner is entitled to exclude $3,600 from his gross income for 1969 as fellowship or scholarship grants under section 117. [1]
*162 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The petitioners, Carl H. Naman (hereinafter referred to as petitioner) and Mary Cleo Naman are husband and wife and maintained their legal residence in North Augusta, South Carolina, at the time the petition was filed in this case. They filed their joint Federal income tax return for 1969 with the district director of internal revenue, Chamblee, Georgia. Petitioner received a M.D. degree from the Medical College of Georgia in 1967. Thereafter, he completed an internship at Macon Hospital, Macon, Georgia in the years 1967 and 1968 and received his license to practice medicine in Georgia. Petitioner began a residency in general surgery at the Medical College of Georgia in July 1968 and remained there as a resident throughout 1969. After petitioner was classified as a second year resident in midyear 1969 his pay was increased from $4,800 a year to $5,400 a year. Although petitioner was not a candidate for a degree he was receiving credit hours from the Medical College of Georgia. Completion of a residency program is required to become a surgeon qualified by the American Board of Surgery. *163 The Medical College of Georgia (hereinafter referred to as MCG) has three affiliated hospitals participating in its surgical residency program. They are the Eugene Talmadge Memorial Hospital (hereinafter referred to as Talmadge Hospital), the Veterans Administration Hospital (hereinafter referred to as V.A. Hospital) and the University Hospital. During 1969 petitioner was assigned to Talmadge Hospital for six months and three months each at the V.A. and University Hospitals. Talmadge Hospital is owned by the Medical College of Georgia. It accepts patients, many of whom are indigents, by referral from physicians throughout Georgia. Selection of patients is based in large part on the teaching value of the patient to the hospital. During his six months at Talmadge Hospital, petitioner was responsible for admitting patients and writing patient histories, diagnosis and discharges. The out-patient clinic treated approximately 70,000 patients per year, about 90% of whom were handled by interns and residents under the supervision of staff doctors. Petitioner participated in this function. Petitioner assisted in preoperative and postoperative care of assigned patients. He was *164 responsible for making regular rounds and was frequently on call for periods of 24 to 48 hours. Petitioner played a vital role in the training process by supervising interns under him. Non-indigent patients and those eligible for medicare or medicaid were billed by the Medical College of Georgia for services performed by petitioner at Talmadge Hospital. The V.A. Hospital is operated by the Veterans Administration for the primary purpose of providing medical care for veterans. Petitioner was paid out of V.A. educational and training funds by the V.A. Hospital while he was there. Federal income tax was withheld from his pay and a W-2 form was issued to him.Petitioner's duties at the V.A. Hospital included examining patients and writing patient histories, diagnosis and discharges. He assisted a staff surgeon in managing assigned patients and was required to remain on duty within the hospital for a 24-hour period every 72 hours. University Hospital is the city-county hospital for Augusta, Georgia, supported by city-county funds and as a result treats many indigent patients. At University Hospital residents and interns were primarily responsible for providing initial treatment *165 in the emergency room and handling ward patients not being treated by a private physician. Petitioner was paid by the Medical College of Georgia for his services at both University and Talmadge Hospitals. Federal income tax was withheld from petitioner's salary and a W-2 form was issued to him. A resident's pay was based upon his experience and not his financial need. In addition to his salary petitioner received two weeks paid vacation per year, free professional liability insurance and free hospital insurance. Petitioner could act independently in certain emergency situations but he was at all times subject to control and supervision by a staff physician of the hospital in which he was working. Petitioner was given additional responsibility as he became more experienced. OPINION The issue is whether the petitioner is entitled to exclude from his gross income for 1969 certain stipends received from the Medical College of Georgia and the V.A. Hospital as fellowship or scholarship grants under section 117. Section 117 excludes from gross income any amount received as a scholarship or fellowship grant. For individuals who are not candidates for a degree, such exclusion *166 is limited to $300 per month for each month during the taxable year that the recipient received amounts under the scholarship or fellowship grant. Section 1.117-4(c) of the Income Tax Regs., provides that the following payments or allowances shall not be considered to be amounts received as scholarship or fellowship grants for the purpose of section 117: (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary *167 purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. * * * The validity of these regulations has been upheld by the Supreme Court of the United States. Bingler v. Johnson, 394 U.S. 741 (1969). The facts establish that the payments to the petitioner were made for the primary purpose of compensating him for present services rendered under the direction or supervision of the grantor of the payments. Petitioner did in fact perform useful and valuable services for the MCG Hospitals; including admitting patients, writing up patient histories, diagnosis, and discharges. He examined and treated patients, assisted in preoperative and postoperative care, staffed the emergency room, made rounds to see assigned patients and was often on call for lengthy periods. Petitioner contends that these services were necessary incidents to the accomplishment of his purpose of training and education; however, this does not alter the fact that the performance *168 of these services was of substantial benefit to the MCG Hospitals. See action 1.117-4(c) (2), Income Tax Regs.Petitioner's assistance enabled the V.A. Hospital to carry out its responsibility to provide care for veterans. His assistance was valuable to University Hospital in carrying out its responsibility as city-county hospital to care for indigent patients. The record shows that Talmadge Hospital was benefited to the extent that residents and interns carried the burden of treating approximately 90% of 70,000 out-patients per year, many of whom were indigents from throughout Georgia. Petitioner contends that even though residents, interns and fellows outnumbered staff physicians the MCG Hospitals could have functioned without their services. He offered no proof on this point other than his own testimony, but even if we were to so hold it would not change the compensatory nature of the payments. The fact remains that the MCG Hospitals did use petitioner's services and paid for them. The fact that an employee may be dispensable does not render his salary noncompensatory. Frederick Fisher, 56 T.C. 1201 (1971). Petitioner was paid for services rendered and received *169 fringe benefits normally associated with employment. Because of the nonpermanent nature of his employment he did not receive all normal employee benefits, such as life insurance and retirement benefits; however, he did receive paid vacation, free hospital insurance and professional liability insurance. His rate of pay was not based on financial need as is normally the case in true scholarship or fellowship grants but on his experience and usefulness to the MCG Hospitals. Aloysius J. Proskey, 51 T.C. 918 (1969). According to his own testimony, petitioner was subject to the direction or supervision of the grantor of the payments. His working hours and his specific responsibilities during those hours were selected by the grantor. He had a duty to report any independent action to the staff physician over him.
The fact that petitioner performed present, valuable services for and under the supervision of the grantor requires us to hold these payments not excludable under section 117. See section 1.117-4(c) (1), Income Tax Regs.
The petitioner stressed that the primary purpose for both the residency program and his motive for entering that program was to further his *170 training and education. He therefore contends that the payments he received are excludable from gross income because of section 1.117-4(c). We do not agree. The Court of Appeals for the 4th Circuit has recently held, on very similar facts, that the "primary purpose" test of section 1.117-4(c) refers to the primary purpose of the payment itself. Hembree v. United States, 464 F.2d 1262 (C.A. 4, 1972). The primary purpose for the existence of the hospital and the recipient's purpose in entering the residency program are immaterial. It is clear that the payments to petitioner were made to secure his valuable services and not for the purpose of furthering his education. They were not "relatively disinterested, "no-strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." Bingler v. Johnson, 394 U.S. 741, 751 (1969). The petitioner further contends that the residency program is an educational program because it would qualify for the award of educational assistance benefits by the Veterans Administration. Although the residency program would be considered educational for purposes of Veterans benefits, that *171 does not change the character of the services performed. Compensation received for services is not converted into a scholarship or fellowship grant because the recipient in rendering such services simultaneously receives training qualifying for assistance from the Veterans Administration. We hold that petitioner cannot exclude from his gross income for 1969 any portion of the payments received from the MCG Hospitals. Decision will be entered for respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated. ↩